186 So.2d 712 (1966)
Mrs. Emily BREITENBACH
v.
Betty Jo GREEN and the Phoenix Insurance Company.
No. 2170.
Court of Appeal of Louisiana, Fourth Circuit.
May 2, 1966.
Rehearing Denied June 6, 1966.
*714 Occhipinti, Occhipinti, Casano & Kunz, A. R. Occhipinti, New Orleans, for plaintiffs-appellees.
Lloyd Cyril Melancon, New Orleans, Porteous & Johnson, New Orleans, of counsel, for The Phoenix Ins. Co., defendant-appellant.
Weinstein, Bronfin & Heller, Sylvan J. Steinberg, New Orleans, for Betty Jo Green, defendant and third-party plaintiff, appellee.
William J. Guste, Jr., Robert A. Keily, Roy F. Guste, James M. Colomb, Jr., New Orleans, Guste, Barnett & Little, New Orleans, of counsel, for Irving M. Jacobs, third-party defendant, appellee.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
BARNETTE, Judge.
This is a suit involving several issues arising out of an accident in Jefferson Parish on May 2, 1958, in which an automobile driven by defendant Betty Jo Green struck and seriously injured plaintiff, Mrs. Emily Breitenbach, a pedestrian.
The Phoenix Insurance Company was made a defendant because it had issued a public liability insurance policy to Betty Jo Green covering the Cadillac automobile involved in the accident through its agent Dixie Insurance Agency, Inc., of which one Irving M. Jacobs was president and general manager.
Suit was filed March 26, 1959, against Miss Green and Phoenix. Numerous pleadings were filed and several collateral issues were injected in the proceeding which finally came to trial, ending in judgment on October 13, 1965. In the meantime the plaintiff died of causes unrelated to the accident on March 4, 1963, and her two daughters, Mrs. Althea Schlumbrecht and Mrs. Audrey Higgins, were substituted as parties plaintiff.
Judgment for $4,000 plus special damages of $542.86 was rendered in favor of the substituted plaintiffs against Miss Green and Phoenix, in solido, and in favor of Miss Green against Phoenix for such sums as she might be required to pay thereunder. Judgment was rendered in favor of Miss Green and Irving M. Jacobs, third party defendants, against Phoenix, third party plaintiff, rejecting the third party demands of Phoenix against them. Judgment was further rendered in favor of Miss Green, plaintiff in reconvention against *715 Phoenix, in the sum of $1,000 for attorney's fees. Phoenix has appealed.
Upon learning that Miss Green was employed at a place and in an alleged capacity which made her an uninsurable risk, the insurer, Phoenix, on April 7, 1958, mailed to Miss Green, the insured, a notice of cancellation of the policy to be effective at 12:01 a. m., April 19, 1958. The notice of cancellation was properly posted addressed to the insured at the address shown in the policy. It was returned to Phoenix, April 14, with the notation "unknown." Phoenix made no further attempt to notify the insured of the cancellation until after the accident was reported. It claimed compliance with LSA-R.S. 22:636 and denied insurance coverage of Miss Green on May 2, 1958, the date of the accident.
Notwithstanding its denial of coverage on account of the alleged cancellation, and with reservation of its rights in that respect, Phoenix did answer plaintiff's petition on its own behalf and on behalf of Miss Green denying liability, denying any negligence of Miss Green, and pleading affirmatively the contributory negligence of plaintiff. On its own behalf, it also pleaded cancellation of its policy. In the same pleading it alternatively assumed the position of third party plaintiff against Miss Green and Jacobs, its agent, for judgment in such sum as it might be cast, alleging against Miss Green (1) failure to cooperate and give assistance in defense of plaintiff's suit; (2) failure to disclose material facts about her employment, residence, etc., and (3) breach of contract. It alleged against Jacobs breach of his fiduciary duty in failing to inform Phoenix of Miss Green's address and the nature of her employment, and in failing to make prompt refund of the unearned portion of the premium to Miss Green after cancellation of the policy.
Through her own attorneys defendant Green also filed answer to plaintiff's petition denying negligence and pleading contributory negligence. She also answered Phoenix's third party petition and reconvened, charging breach of contract by refusal to defend the suit against her, and prayed for judgment for attorney's fees in personally defending the suit.
The issues presented by these pleadings and the order in which we will discuss them are:
1. Liability for injuries to plaintiff,
2. The cancellation of the insurance policy by Phoenix,
3. The third party demand against Miss Green,
4. Third party demand against Jacobs,
5. Miss Green's reconventional demand against Phoenix for attorney's fees, and
6. Quantum of damages.
The question of negligence and proximate cause of the accident is one of fact. The trial judge apparently had no difficulty in deciding this question in favor of the plaintiff. Mrs. Breitenbach, a sixty-year-old woman was crossing Metairie Road at Avenue A while going to or from a church service at about 6:55 a. m., on May 2, 1958, when she was struck by the defendant, Miss Green, who was driving on Metairie Road apparently at a high rate of speed. Skid marks of ninety feet left by the car verified her excessive speed. The deputy sheriff who investigated the accident testified that Miss Green smelled strongly of liquor. She was taken in custody by the officer but was later released. Neither defendant made any serious attempt to dispute the negligence of Miss Green, and no evidence of contributory negligence on the part of the plaintiff has been brought to our attention. Miss Green did not appeal from the judgment against her, and appellant Phoenix has made no contention on appeal that the judgment of the trial court is in error on the question of negligence. The judgment is manifestly *716 correct on this point and does not appear to be an issue before us.
The most serious question we face is whether or not the attempted cancellation of the insurance policy by Phoenix was sufficient compliance with LSA-R.S. 22:636 to relieve Phoenix of liability as Miss Green's insurer.
The pertinent part of LSA-R.S. 22:636 provides as follows:
"A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.
* * * * * *
"B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the Post Office upon failure to find, or deliver the mailing to the addressee.
"C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed."
As stated above, after the issuance of the policy by its agent to Miss Green on March 29, 1958, the insurer, Phoenix, for the alleged reason that Miss Green was not an insurable risk, determined almost immediately to cancel the policy. This decision was based on the fact that Miss Green was an employee of the Court of Two Sisters, a business establishment in the French Quarter of New Orleans. She had represented in her application for insurance that her duties were that of a secretary. Phoenix has alleged that she was actually a night club entertainer and was using an assumed name. Whether or not those allegations or suspicions of the insurer were well-founded, we have no doubt that Phoenix had a right to cancel the policy.
On April 7, a notice of cancellation was properly posted and mailed to the insured addressed to her at the address given by her and shown in the policy, 1520 Owens Boulevard, Apartment B, New Orleans, Louisiana. The notice was not received by Miss Green and was returned to Phoenix on April 14 marked "unknown." Upon receipt of the returned envelope containing the notice of cancellation effective at 12:01 a. m., April 19, Phoenix made no further attempt to notify Miss Green and simply placed the returned notice of cancellation in its files. The agent Jacobs, through whom the policy was issued, was not notified of the cancellation until after the accident. We have no doubt that he could have contacted Miss Green. Furthermore, the policy itself disclosed Miss Green's place of employment, a well-known business establishment in New Orleans, and the alleged capacity in which Miss Green was employed. She had no actual notice of the attempted cancellation until informed of it by Jacobs on May 7, after the accident had been reported. At that time she demanded of Jacobs a return of the unearned premium. Actual return was not made or attempted until May 14, when Jacobs was practically forced by the district office manager of Phoenix to mail a check to Miss Green. This was mailed to her at 417 Phosphor Street, the address to which she had allegedly moved from Owens Boulevard. The premium refund check was received by Miss Green but has never been presented for payment. Just when and if Miss Green changed her address *717 from Owens Boulevard to Phosphor Street is not clearly shown, but the fact is that the notice sent to her at the Owens Boulevard address was not delivered and was returned to the insurer's office. The check mailed to the Phosphor Street address was received.
Counsel for Phoenix strenuously contends in argument and brief that Phoenix complied with the requirements of LSA-R.S. 22:636 by mailing the cancellation notice to the insured more than five days before the effective date of the cancellation, addressed to her at her last address as known to it and as shown by its records. He relies upon the authority of Burrough v. United States Cas. Co., 170 So.2d 159 (La.App. 4th Cir. 1964); American Sur. Co. of New York v. Fowler, 135 So.2d 663 (La.App. 3d Cir. 1961); Skipper v. Federal Ins. Co., 238 La. 779, 116 So.2d 520 (1959); and Ellzey v. Hardware Mut. Ins. Co., 40 So.2d 24 (La.App. 1st Cir. 1949), insofar as they construe the applicable portions of LSA-R.S. 22:636. It is our opinion that these authorities do not support the insurer's defense of cancellation and non-coverage under the facts presented here.
In Burrough v. United States Cas. Co., supra, the notice of cancellation was mailed to the insured at his home address at a time when he was in a hospital within knowledge of the insurer. The notice was received by the insured's wife but did not come to his attention until after his return from the hospital which was after the effective date of cancellation but before the accident. This court held the cancellation had been effected by strict compliance with the statute.
In American Sur. Co. of New York v. Fowler, supra, the insurance company produced as evidence a copy of a cancellation notice sent to its policyholder at his correct address which terminated the policy prior to the time of the accident, an affidavit by its mail clerk that the notice had been mailed, and the testimony of the local agent who sold the policy that he had received a copy of the notice of cancellation shortly after the mailing date. The court held that the insurer had discharged the burden of proving the cancellation in compliance with the statute.
In Skipper v. Federal Ins. Co., supra, the cancellation notice was mailed to the insured at the address shown in the policy and was not returned. However, the Court held that the prima facie presumption of delivery created by compliance with the statute was successfully rebutted. It placed particular emphasis on that language of the statute which requires that notice must be sent to the insured at "* * * his last address as known to the insurer or as shown by the insurer's records * * *," citing Paz v. Implement Dealers Mut. Ins. Co., 89 So.2d 514 (La.App. Orleans 1956). The evidence established that the address of the insured known to the insurer's agent was one other than that to which the notice was sent. The court held that knowledge of the agent was binding on the company, citing Ellzey v. Hardware Mut. Ins. Co., supra, and, consequently, that the presumption of delivery had not come into effect since there had not been compliance with the mailing requirements of the statute. The insurer bore the burden of establishing the fact of effective cancellation and failed to discharge that burden.
In Long v. Home Indem. Co., 169 So. 154 (La.App. 2d Cir. 1936), where a notice of cancellation was sent by registered mail to the insured at Greenwood, Louisiana, and was returned unclaimed, the court held that the duty devolved upon the insurer to make further effort to notify the insured. The insurer had corresponded with the insured at Waskom, Texas, which the court held was sufficient notice to it that he could be notified at Waskom. A delay of more than three weeks before the accident occurred was ample time for the insurer to notify the insured after it had knowledge that the notice sent to Greenwood had not been received. See also Alexander v. State Farm Mut. Auto. Ins. Co., 148 So.2d 898 (La.App. 1st Cir. 1962).
*718 All of the foregoing cases hold either expressly or in principle that the burden is upon the insurer to establish facts which relieve or limit its liability for insurance coverage. Here the defendant The Phoenix Insurance Company has failed to carry this burden.
The cancellation notice addressed by Phoenix to Miss Green at the Owens Boulevard address shown in the policy as her place of residence was returned within a week. Thus Phoenix had actual knowledge that it had not been received. If the notice had not been returned, Phoenix would be in a much more favorable position under the presumption provided by LSA-R.S. 22:636; but since the notice was returned and Phoenix had actual notice of nondelivery, the presumption of its receipt falls.
Applying the jurisprudence discussed in the foregoing cases we must hold that after the return of the notice Phoenix had a duty to make a further effort to notify Miss Green. It did nothing, but merely filed the returned notice. As shown on the face of the policy, Miss Green was employed at the Court of Two Sisters. The very fact that she was employed there was one of the alleged reasons for the cancellation. The insurer could hardly say therefore that it did not know of any other address where Miss Green could be reached. Furthermore, its agent Jacobs could easily have delivered a notice to Miss Green. Any knowledge he had was knowledge of the insurer.
We therefore hold that the attempted cancellation by Phoenix was ineffective, and Miss Green was covered within the limits of the policy on May 2, 1958, the day the accident occurred.
Alternatively, Phoenix, in a third party action against Miss Green, seeks to hold her liable for any judgment which might be rendered against it on account of the insurance coverage. This demand is based on the allegation that she failed to disclose material facts and information about herself and her employmentfacts which if known would have shown her to be an uninsurable risk and would have prevented issuance of a policy. There are a number of allegations and inferences that Miss Green's duties of employment were something other than "secretary" and that she might have been a night club entertainer using the name of Denise Renault, but there is no evidence in the record to substantiate these allegations. It is at most sheer speculation. In the absence of proof that such things are in fact true, we cannot hold that there has been a breach of duty on her part and cannot sustain the third party demand. The authorities relied upon by Phoenix on concealment and withholding of material facts need not be discussed since the concealment or misrepresentation of material facts has not been proved. Phoenix's third party action against Miss Green also alleges that she breached the insurance contract by failing to give a timely accident report and failing generally to assist the insurer in defense of the suit. On this question we must again hold that the proof does not support the allegations.
The third party demand against Irving M. Jacobs based upon his alleged breach of the fiduciary duty which he owed his principal by not informing it of the nature of Miss Green's employment and of her change of address and by failing to return promptly the unearned premium after cancellation must also be rejected because of insufficient evidence. The third party plaintiff has failed to establish by a preponderance of the evidence that Jacobs had any more knowledge of material facts than he disclosed to his principal. As to the failure to make prompt return of the unearned premium, we find that Jacobs had no notice of the attempted cancellation until after the accident and therefore cannot be held accountable for not making the return timely. Since Phoenix has not proved a breach of fiduciary duty by Jacobs, it is unnecessary to discuss the legal authorities cited on this subject.
*719 Miss Green was awarded a $1,000 judgment for attorney's fees against Phoenix for her defense of this suit. Her third party demand against Phoenix on which this award was based was predicated on the claim that it was necessary for her to retain counsel separately to defend the suit against her when Phoenix refused to undertake her defense in breach of the provisions of the policy. We do not feel that the award was proper.
Phoenix had an obligation under the contract to defend the principal suit against Miss Green on her behalf. Had the insurer failed to defend, it would have been liable in damages for breach of contract which damages would be measured by the reasonable expense of defending, including an attorney's fee. Kansas v. Sun Indem. Co., 37 So.2d 621 (La.App. Orleans 1948); Lang v. Jersey Gold Creameries, Inc., 172 So. 389 (La.App. 2d Cir. 1937). However, the record in this suit clearly indicates that Phoenix did defend the principal action for Miss Green, and she retained counsel to litigate the issue of the validity of the attempted cancellation of the policy. It is true that Miss Green's separate counsel filed pleadings on her behalf in answer to plaintiff's petition, but these pleadings were filed after those filed on her behalf by Phoenix; they added nothing to her defense, and were merely a duplication of the defenses already raised. Clearly, Miss Green was not forced to secure her own counsel to protect her interests in the principal action by any failure or refusal of Phoenix to defend her.
The case of Shehee-Ford Wagon & Harness Co. v. Continental Cas. Co., 170 So. 249 (La.App. 2d Cir. 1936), is relied on by Miss Green to support the award of the attorney's fees. There is language in that case which indicates that if an insurer chooses to assert a defense based on non-coverage under its policy, it becomes liable for expenses of defense incurred by the insured if the court determines that the policy did cover the principal cause of action asserted against the insured, even if the insurer defended the principal action on the merits on behalf of its policyholder.
We cannot accept that proposition as a valid legal principle. The Lang, Kansas, and Shehee-Ford cases, and the instant case, are all examples of a particular type of litigation which combines two law suits into one proceeding. One suit is the principal action by the injured party against the alleged tort-feasor. This is the action which the insurer has contracted to defend. The other suit is the separate action between the insured and the insurer over the coverage and interpretation of the policy. Obviously the insurance company is not obligated to represent its insured in this controversy against its own interests. Furthermore, the winning party in an action on a contract is not entitled to attorney's fees as damages in absence of an agreement to that effect in the contract or a statute imposing such a fee. There is no provision in this policy for attorney's feesnor is there any applicable statute authorizing such awardfor litigation between the insured and the insurance company over the coverage of the policy.
The distinction between the issues of coverage and liability of the insured is pointed out by the court in Standard Sur. & Cas. Co. of New York v. Perrin, 19 So.2d 783 (La.App. Orleans 1944). The parties in that suit were litigating the question of the insurer's liability to its insured for his attorney's fee for defending a tort action against the insured and for litigating the question of policy coverage in regard to the accident which formed the basis of a tort action. The insurance company filed suit for a declaratory judgment in Federal court seeking to be relieved from responsibility under the policy. The insured's attorney successfully defended that action and also defended the insured on the merits of the tort action. The court awarded judgment for the attorney's fee for the litigation on *720 the merits but not for defense of the declaratory action. The court said:
"* * * The obligation of the insurance company, under its policy, was to defend any action for damages brought against the assured as the result of an accident. When it violated this provision of its contract, it became liable for the expense incurred by the insured as a consequence of its breach. But it did not agree to waive its right to contest its liability and there is no provision contained in the policy which condemns it for the attorneys' fees incurred by the assured in case he is forced to resort to the courts in order to have his rights under the contract established. Therefore, the insurance company, believing that the accident was not covered under the policy, was entitled to proceed in the Federal Court for a declaratory judgment without rendering itself liable to defendant for the attorneys' fees incurred by him in defeating its actions. * * *" 19 So. 2d at 787.
The confusion arose in the Shehee-Ford case, supra, because the procedural situation developed (as it usually does) that the insurer was made a defendant to the principal action of the injured plaintiff in addition to being called in warranty by the tort-feasor. The basis on which the insurer is made a party defendant to the principal action under our direct action statute has two elements. The first is that the insured caused the injury by a tortious act; the second is that the insurer has issued a policy to the insured which covers his liability for such acts. To recover from the insurance company, the plaintiff must establish both elements, and clearly the company has the right to resist the action against itself by showing the absence of either element or both.
The rationale of Shehee-Ford is that the insurer must choose in this situation to defend its insured on the merits or to defend itself on non-coverage and that it cannot consistently do both. The result is that the insurer is faced with an unhappy dilemma. If it chooses to defend on the basis of non-coverage, it waives its right to defend the principal action on the merits of its insured's liability. And if it loses on the issue of coverage, it is liable for the fee of the insured's attorney. If, on the other hand, the insurance company chooses to defend on the issue of its insured's liability on behalf of itself and its insured, it necessarily waives its defense on the issue of coverage.
To put the insurer in this dilemma is unfair and unnecessary. The flaw in the rationale of Shehee-Ford is that it loses sight of the fact that for the purposes of judicial and procedural convenience, three causes of action are involved in one case: the plaintiff's action against the insured, his action against the insurance company, and the insured's action against the company. As was pointed out in Fontenot v. State Farm Mut. Ins. Co., 119 So.2d 588 (La.App. 1st Cir. 1960), there is nothing inconsistent in asserting both defenses of noncoverage and of nonliability of the insured. To the plaintiff's cause of action against the insurer, the insurer raises both issues since both are essential elements of plaintiff's case. To the insured's cause of action against the insurance company, it asserts the defense of noncoverage. And, under the terms of its contract, it defends the insured in plaintiff's cause of action against the insured on the merits of his liability. Viewing the causes of action separately there is no inconsistency or necessarily implied waiver of any defense.
We agree with the opinions expressed in the Fontenot and Perrin cases, and cannot follow the rationale of Shehee-Ford. Phoenix, on behalf of itself and Miss Green, made the only defense which was made in this case on the question of tort liability. Neither Miss Green nor her attorney has expended any effort whatever on this subject. Miss Green did not appeal from the judgment of tort liability and not one word of her brief in this court mentions *721 liability or quantum of damages. Her entire litigious effort was devoted to the controversy between herself and her insurer on the issue of cancellation. She is not entitled to recover attorney's fees for this litigation.
Phoenix recognizes the right of the substituted plaintiffs to recover damages on account of the pain and suffering of their mother which preceded her death,[1] but argues that the award of $4,000 under the facts of this case is excessive. It contends that damages for the injuries sustained, which were not the cause of death, should be limited to a reasonable amount for the time not extending beyond the date of death of the injured party. We find no fault with the principle of this argument, but disagree with appellant that the award of $4,000 for pain and suffering from May 2, 1958, to March 4, 1963, four years and ten months, is excessive. The substituted plaintiffs have not answered the appeal asking for an increase, so we have to consider only if the award is excessive.
Unquestionably Mrs. Breitenbach was struck with great impact, and her body was dragged or pushed along in front of Miss Green's car for some distance before it came to rest. The car did not run over the body. The injuries sustained were quite severe. She was taken to the Charity Hospital by ambulance where she remained seven days. After discharge she received treatment at the outpatient clinic almost weekly until death.
She sustained a fracture of the right tibial plateau, fracture of the right lateral malleolus, numerous lacerations of the face and scalp, and multiple, severe contusions over most of her body. Mrs. Breitenbach never fully recovered from these injuries and undoubtedly suffered much pain and great handicap. In addition to these injuries which were the direct result of the accident, she suffered intensely from traumatic arthritis of the left knee. There is no positive evidence that the trauma which caused this condition was the accident in question, but that is most probable. Certainly, it was an aggravating cause.
An allowance of $4,000 for the pain and suffering resulting directly from the injuries sustained extending over the remaining four years and ten months of life of this lady is in our opinion, to say the least, not excessive. It amounts to less than $1,000 per year. There is no manifest error in the trial court's judgment in this respect, and the award will not be disturbed. Ballard v. Nation Indem. Co., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
The special damages of $542.86 were not contested and appear to be amply supported by the evidence.
For the foregoing reasons the judgment appealed from is reversed insofar as it awards judgment in favor of Betty Jo Green, plaintiff in reconvention, against The Phoenix Insurance Company, defendant in reconvention, in the sum of $1,000 for attorney's fees; and judgment is now rendered in favor of The Phoenix Insurance Company, defendant in reconvention, and against Betty Jo Green, plaintiff in reconvention, rejecting the demands of Betty Jo Green and dismissing her suit in reconvention.
In all other respects the judgment appealed from is affirmed at appellant's cost.
Reversed in part; affirmed in part.
NOTES
[1] LSA-C.C. art. 2315; Dumas v. United States Fid. & Guar. Co., 241 La. 1096, 134 So.2d 45 (1961); Payne v. Georgetown Lumber Co., 117 La. 983, 42 So. 475 (1906); Hughes v. Hartford Acc. & Indem. Co., 195 So. 81 (La.App. 1st Cir. 1940).