230 So.2d 887 (1969)
Bryan CLEMMONS, Sheriff of East Baton Rouge Parish, Plaintiff-Appellee,
v.
ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE COMPANY, Defendant-Appellant.
No. 7840.
Court of Appeal of Louisiana, First Circuit.
December 22, 1969.
On Rehearing February 2, 1970.
*889 Frank S. Normann, of Normann & Normann, New Orleans, for appellant.
Robert L. Kleinpeter, Baton Rouge, for appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Zurich General Accident and Liability Insurance Company (Zurich) takes this appeal from a judgment of the district court awarding plaintiff judgment in the amount of $24,158.40, representing reasonable attorney's fees for services rendered to the Sheriff by Robert L. Kleinpeter in defense of the Sheriff, Zurich's assured in the cases of Webb and Owen v. Zurich Ins. Co., 194 So.2d 436, 442; reversed on writs, 251 La. 558, 590, 205 So.2d 398, 410.
The sole issue presented is whether or not the actions of Zurich constituted a refusal to defend its insured thereby breaching its contractual obligation under the policy and rendering Zurich liable for the fees claimed.
Zurich presents a two-fold defense. First, it contends the insured was fully defended and therefore there was no breach of any contractual obligation. Alternatively, Zurich maintains the fees awarded are excessive and should be reduced because plaintiff did not adequately prove the value of the services rendered.
In detailed oral reasons for judgment which were dictated for the record, the trial judge held that throughout the course of the Webb and Owen cases on the merits, the firm of Normann and Normann, Attorneys at Law, represented Zurich and Mr. Robert L. Kleinpeter represented the Sheriff. The trial judge acknowledged that in the performance of these duties for Zurich by Normann and Normann, services were also rendered which inured to the benefit of Mr. Clemmons. On this point the trial judge stated, "Certainly they (Zurich and Clemmons) occupied similar positions and had a common interest in the defense of the Owen and Webb law suits. We do not believe that this negates the role that Mr. Kleinpeter played as primary counsel for Sheriff Bryan Clemmons". The judge a quo, therefore, found that Zurich had in effect declined to defend Mr. Clemmons and had accordingly breached its contractual obligation to him and must stand in judgment to the latter for reasonable attorney's fees. For reasons hereinafter stated we are of the opinion that the decision of the trial judge is correct and should be affirmed.
It is conceded that Zurich issued a liability policy with limits of $500,000 covering a Cessna 182 single engine aircraft belonging to the Sheriff's Office. It is also acknowledged that while the policy was in force, the insured plane crashed in the State of Michigan on or about April 28, 1956. In the crash Jesse Webb, Jr., Mayor of Baton Rouge, Dr. Kimbrough Owen, a member of the Louisiana State University faculty, and Paul O. Pittman, the named pilot of the aircraft, were killed. In 1957, the families of all decedents instituted suits seeking damages for the decedents' alleged wrongful deaths. We are here concerned only with the Webb and Owen suits. In each of these actions Sheriff Bryan Clemmons of the Parish of East Baton Rouge and Zurich as Clemmons' alleged liability insurer, were named as defendants. Clemmons' liability was based on the averred negligence of his deputy, Paul O. Pittman. The suits, consolidated for trial, collectively sought damages in excess of Zurich's policy limits. The record discloses that the Webb suit was filed on April 11, 1957 and the Owen suit on April 26, 1957. Under date of April 18, 1957 Mr. Frank S. Normann of the firm of Normann and Normann, as attorneys for Zurich, addressed a *890 letter to Sheriff Clemmons which in part stated:
"* * * We understand that you accepted service of this petition on April 12, and under the law we must file responsive pleadings in your behalf within ten days from the date on which you accepted service. We have written Messrs. Brumfield and Weber and requested that they allow us additional time in which to file responsive pleadings, and we respectfully request that you do not take any action in your own behalf through your own counsel since the Zurich's policy provides for the furnishing of your defense in this case. During the early part of next week we will want to confer with you in connection with this matter." (Emphasis ours)
Following this letter the Webb and Owen suits were consolidated.
On May 7, 1957 Zurich filed individual exceptions on behalf of both the Sheriff and Zurich. The exception of no cause or right of action was premised on the ground that the fatal accident occurred outside of the State of Louisiana and plaintiffs were without right to invoke the provisions of the direct action statute. The exception on behalf of the Sheriff interposed the defense that the pilot, Paul O. Pittman, was not acting as an agent for Sheriff Clemmons and further that Clemmons as the duly elected Sheriff of East Baton Rouge Parish was immune from liability.
From October 25, 1957 to September 25, 1958 Normann and Normann engaged in extensive pre-trial discovery, taking numerous depositions, propounded interrogatories, etc. On September 25, 1958 Mr. Frank S. Normann on behalf of these attorneys addressed a letter to Mr. Clemmons which stated:
"In the above captioned case you have been sued by Mrs. Webb and Mrs. Owen along with the Zurich Insurance Company. Exceptions challenging the right of these two ladies to proceed against you, as well as the Zurich Insurance Company, were timely filed, and as yet, have not been disposed of by the court. No responsive pleadings have been filed to the plaintiffs' separate actions as of this writing, nor will such responsive pleadings be filed until the court rules upon the exceptions.
We have made a thorough investigation into this matter, and the plaintiffs have taken discovery depositions, the results of which now indicate that serious questions of coverage under the Zurich's policy may be raised. If it becomes necessary to do so, then, of course, our representation of the insurer will necessitate your employing separate counsel to represent your interests.
In addition, the court's ultimate decision on the pending exceptions may be important in this respect. If the court overruled the Zurich's exceptions, thereby forcing the Zurich to remain as a party defendant in the suit along with yourself, assuming your exceptions are also overruled, the question of coverage would then, of course, necessitate separate counsel on your behalf. On the other hand, if the court dismisses the Zurich from the suit, but keeps you therein, we could offer you a defense irrespective of the questions of coverage under the policy, but we would have to do so under what is known as a non-waiver agreement, whereby our rights to urge the coverage questions would be reserved.
In the meantime, I would like to confirm what I stated to you upon my last visit in person and that is, these suits exceed the limits of the policy in question, and insofar as any excess of the policy limits, you have the right to select counsel of your own choice to defend your interest in that respect if you care to do so." (Emphasis ours)
Notwithstanding the above letter Normann and Normann continued in their preparation of the defense in the two suits.
*891 On July 5, 1961, in each suit, Normann and Normann filed identical answers, one on behalf of Zurich and one on behalf of Mr. Clemmons. In the Zurich answer they contended that Mr. Pittman was not acting within the course and scope of his duties as special deputy sheriff at the time of the fatal accident and any negligence of Pittman could not be imputed to the Sheriff. The answer further interposed certain policy exclusions applicable to civil air regulations. In the answer for Mr. Clemmons they interposed the defense of immunity from liability by virtue of his position as Sheriff for the Parish of East Baton Rouge. Several other defenses were affirmatively pled which are not germane to the issue now before us.
On July 4, 1961, Mr. Frank S. Normann, on behalf of Normann and Normann, addressed another letter to Mr. Clemmons which contained copies of answers filed in his behalf in the two cases, a non-waiver agreement, and a copy of their previous letter of September 17, 1958. This letter of July 4, 1961 also contains the following language:
"(4) A photostatic copy of our letter to you dated September 25, 1968 in which we placed you upon notice that there is a serious question of coverage in connection with these cases and that while we would file responsive pleadings in behalf of yourself, if our exceptions were overruled, we would require that you execute the enclosed non-waiver agreement.

We now again specifically call to your attention that while we have filed an answer in the above captioned cases in your behalf, because we are required to do so under the policy provisions, there is a conflict of interests in these cases and you should engage your own counsel to defend your interests therein. Of course, if you decide not to engage your own counsel, we shall proceed with the defense of these cases to the best of our ability.
It must be specifically understood that the Zurich Insurance Company reserves all of its rights under its policy contract, and should you decline to execute the non-waiver agreement enclosed herewith, we will proceed with the defenses to these cases with full reservation of the insurer's rights as though the non-waiver agreement had been executed by you." (Emphasis ours)
On July 26, 1961 Mr. Kleinpeter answered Mr. Normann's letter of the 19th and stated:
"The writer has now had an opportunity to fully and thoroughly digest the file and while there are some questions which we still have to answer for ourselves, we are nevertheless of the firm opinion that there is positively no conflict of interest between Zurich Insurance Company and Sheriff Bryan Clemmons. We are firmly convinced that the coverage problems which you propose, and set forth as a defense in your answers on behalf of Zurich Insurance Company, are certainly not valid and if you intend to depend upon these questions of coverage, we want the same thoroughly litigated during the course of this trial. For these reasons, we cannot consent to the non-waiver agreement for two reasons: (1) we do not concur in your opinion to the effect that there is any coverage problem, and (2) your non-waiver agreement is entirely too broad even if we did entertain any idea of signing the same.
Accordingly, we must insist that you as attorney for Zurich Insurance Company and Sheriff Bryan Clemmons, as insured under the policy, afford the Sheriff and the Sheriff's office of the Parish of East Baton Rouge, Louisiana, the full protection of the policy including all defenses, costs and other related matters incidental to the trial of this cause, including any appeal. We will represent Sheriff Bryan Clemmons in his individual capacity and as Sheriff of the Parish of East Baton Rouge, Louisiana, particularly with reference to any excess demand over and *892 above the policy limits. However, our representation will be at all times open to discussion concerning any problem, inasmuch as we want to cooperate to the fullest under the terms of our insurance contract." (Emphasis ours)
On September 27, 1961 Mr. Kleinpeter filed a motion in both suits to be recognized as attorney of record for Mr. Clemmons. The record is amply clear that from this date forward all of the appearances in the record on behalf of Zurich were by Normann and Normann and all appearances on behalf of Sheriff Bryan Clemmons were by Mr. Robert L. Kleinpeter.
On November 2, 1961, in a letter to Mr. Normann, Mr. Kleinpeter again made his position amply clear by stating:
"The writer wishes to direct your attention to a communication dated September 6, 1961, from this office and directed to you and through you to Zurich Insurance Company, wherein we advised that, in our opinion, your effort, as a separate defense in the above captioned causes, to invoke the exclusion clauses of the policy issued to Sheriff Bryan Clemmons in a further effort to deny coverage on behalf of Zurich Insurance Company was arbitrary, unreasonable, and certainly without any legal foundation and further giving you until October 15, 1961, to advise us that you would not rely upon such exclusion clauses, insofar as Sheriff Bryan Clemmons is concerned, and further, for you to come in and defend Sheriff Bryan Clemmons to the limits of your policy. As a result of your request for a non-waiver agreement and pursuant to your instructions for Sheriff Bryan Clemmons to retain his own attorneys, due to a possible conflict in interest between you, as counsel for Zurich Insurance Company, and Sheriff Bryan Clemmons, it was necessary that the Sheriff retain our firm to represent him in these proceedings.
It is our firm conclusion at this time, that your efforts to deny coverage, insofar as Sheriff Bryan Clemmons is concerned, under the policy issued by Zurich General Accident & Liability Insurance Company is without merit and further, that your failing to defend Sheriff Bryan Clemmons under Paragraph II(a)[1]of your insuring agreements as contained in the policy above referred to, is wholly without merit.
We further wish to advise that your actions during the past five (5) years, since the date of the accident, should certainly act as an estoppel, even assuming that you had a valid reason for failing to defend the Sheriff, to any effort on your part at this late date to deny coverage and to refuse to defend within the limits of the policy. I refer specifically to the investigation conducted by you on behalf of Sheriff Bryan Clemmons and the Zurich Insurance Company and further, to your appearances on October 30, 1957; September 8, 1958; September 9, 1958; and September 10, 1958, where certain depositions were taken in Lansing, Michigan, Grand Rapids, Michigan and Fort Wayne, Indiana, wherein you made an appearance on behalf of Bryan Clemmons and Zurich Insurance Company. I refer you further to the fact that no effort was made to obtain a statement of any sort from the insured, Sheriff Bryan Clemmons, until the 13th day of September, 1961, although the Sheriff has at all times been willing to cooperate with you and the insurance company.
The writer is presently undertaking to develop an entire file of all the pleadings and other pertinent matters in the above captioned causes; duplicating and copying *893 certain depositions which have been taken, and preparing the necessary memorandum of authority in defense of Sheriff Bryan Clemmons. Needless to say, we have already spent a great deal of time in this matter and will, of necessity, have to spend a great deal more time in the proper preparation of this entire suit on behalf of the Sheriff.
We have previously placed you on notice and through you, the Zurich Insurance Company, to the effect that we intend to collect attorneys fees, penalties and interest for your arbitrary and unreasonable refusal to afford Sheriff Bryan Clemmons coverage under his policy and to represent him to the extent of the limits of the same. We, herein, wish to reiterate that we intend, under the provisions of LSA-R.S. 22:658 after conclusion of these causes, to institute the necessary proceedings to collect attorneys fees, together with penalties, interest and costs incurred by us, for and on behalf of Sheriff Bryan Clemmons.
We find it necessary to advise Zurich Insurance Company, through the issuing agent, of our position herein, so that there may not be any misunderstanding at a later date of whether they were properly informed of the demands contained herein, and previously set forth in detail in our letter of September 6, 1961, addressed to you, as attorney for Zurich Insurance Company." (Emphasis ours)
With respect to the exceptions, Zurich's exception relating to the applicability of the direct action statute against it was referred to the merits. All other exceptions were overruled.
The cases were assigned for the merits on June 18, 1962 and consumed seven trial days. The matter was taken under advisement by the court and written reasons for judgment were filed on June 30, 1965, in favor of the plaintiffs and against the defendants, sustaining Zurich's exception of no right or cause of action, and against Sheriff Clemmons in certain specified amounts both subject to the limit of his insurance policy with Zurich.
Between the conclusion of the trial of the Webb and Owen suits and the date of the judgment by the trial judge the instant controversy arose between Zurich and Mr. Kleinpeter relative to the demand by the latter for the payment of attorney's fees. This cause was filed on January 16, 1963.
Mr. Kleinpeter contends that throughout the proceedings in the trial court and particularly from September 27, 1961, he was led to believe that his fee for representing Sheriff Clemmons would be satisfied by Zurich, subject to their right to question the amount thereof. In support of this contention, Mr. Kleinpeter offered in evidence a letter from Mr. Normann addressed to him dated August 2, 1965 containing the following:
"If the appellate court affirms the lower court's right to pass upon the coverage of the Zurich's policy after dismissing the Zurich from these cases, then I believe the Sheriff will occupy a very embarrassing position if he refuses to cooperate with the Zurich by exhausting all of the legal remedies available to him. If the appellate court affirms the lower court on the question of coverage, it likewise eliminates your concern for the Zurich's liability for your counsel fees, save and except their right to question the amount thereof.

While I have no authority to bind the Zurich should the appellate courts reverse the judgments of the lower court, I have nevertheless made known to you my views on your right to attorney fees for defending the Sheriff. I am sure the Zurich understands the necessity for the Sheriff to have been represented in these cases by competent counsel, and I am also confident they will do the right thing in your case when it is finally concluded.
On the other hand, if you do not care to risk further services in these cases on the theory you may not be paid for your *894 time and efforts, we can request authority of the Zurich to authorize us to represent the sheriff in the appellate courts, if they are of the opinion such a position will not jeopardize their policy interest." (Emphasis ours)
Also along this same vein Mr. Kleinpeter offered another letter to himself from Mr. Normann dated September 8, 1965 which in part states as follows:
"In my previous conversations and correspondence I wrote you that the Zurich had authorized us to inform you, although they would insist upon a review of their defenses as to coverage insofar as the policy provisions were concerned, they would not deny liability for your attorney fees but reserve the right to question the amount thereof. This authority was given to me conditioned upon the Sheriff appealing in these cases which we think he should do.
In our telephone conversation you stated you were unwilling to advise the Sheriff to appeal unless the Zurich was willing to waive their coverage defenses. My reply to you was, we were unwilling to do that but since the court has passed upon the coverage provisions of the policy (which we do not believe the court had the right to do), we feel your position is untenable and that under the decision of the lower court you are bound by the cooperation provisions of the policy.
If, perchance the Sheriff and yourself should change your minds, we trust you will advise us to that effect before the delays for a suspensive appeal have expired. Also, if you change your thinking and decide to take a suspensive appeal, then we will reconfirm our previous position with reference to liability for your attorney fees." (Emphasis ours)
It was argued in brief and orally before us by Mr. Kleinpeter that since Zurich had declined to provide the Sheriff with legal counsel in these two suits and since the judgment of the trial court limited the liability of the Sheriff to the amount of his exposure under the Zurich policy, he determined that it would not be in the best interest of his client to appeal the decision of the trial court. In Webb v. Zurich Insurance Company, 194 So.2d 436, Zurich as defendant-appellant is represented by Frank S. Normann and Margot Mazeau. Sheriff Bryan Clemmons is shown as defendant-appellee and represented by Robert L. Kleinpeter. This court had previously held that Zurich was entitled to appeal suspensively notwithstanding Sheriff Clemmons' declination to appeal. Same entitled cases, La.App., 185 So.2d 230, 232.
After this court's reversal of the lower court's decision on the merits, the Supreme Court of Louisiana granted writs and in its opinion (251 La. 558, 205 So.2d 398) reversed the decision of this court, overruled the exceptions of Zurich, both as to coverage and the applicability of the direct action statute, and rendered judgment against Zurich in the amounts decreed by the trial court. It was noticed in the Supreme Court's decision that "* * * Zurich withdrew its representation of the Sheriff, who engaged private counsel." While we recognize that this statement in the main opinion may be deemed dicta it is representative of the record insofar as the record reflects what attorney appeared on behalf of each litigant.
The question of an insured's contractual right to be provided with a defense in matters such as these and the position of the insurer when a question of coverage arises present a difficult problem for both the insured and the insurer. As a general rule where the policy contains a clause similar to the one quoted hereinabove,[2] even though such suit is *895 groundless or fraudulent, the insurer is required to furnish the insured with a defense. 50 A.L.R.2d 463(3). The dilemma in which the insurer finds itself is recognized and one of two courses of action is available to it. It may require the execution of a non-waiver agreement whereby the insurer agrees to defend and the insured recognizes the right of the insurance company to question coverage; or, the insurer may bring an action against the insured for a declaratory judgment on the question of coverage. In the first instance, the insured is not required to sign. In the second instance, the insured is not entitled to attorney's fees for defending the action. Standard Surety & Casualty Company of New York v. Perrin, 19 So.2d 783 (Orl.App., 1944).
The dilemma, of course, is compounded in Louisiana because an action by an injured party may be directed jointly against the insurer and the insured in which case there may arise a conflict of interest between the insurance company and its insured.
Our courts have recognized that an insurer may deny coverage and yet furnish its insured with a defense without subjecting itself to liability. Fontenot v. State Farm Mutual Insurance Company, 119 So.2d 588, (1st La.App., 1960). This in essence would satisfy the non-waiver requirement mentioned above. Further, an insured who hires an attorney to litigate the issue of coverage alone is not entitled to recover for attorney fees. Breitenbach v. Green, 186 So.2d 712 (4th La.App., 1966). This is similar to the second alternative available to an insurer.
In our opinion, Zurich did not exercise either of these prerogatives available to it and in failing to furnish the Sheriff with counsel it failed to adhere to the general rule that the insurer's duty to defend suits brought against its named insured is determined by the allegations of the injured plaintiff's petition unless the petition unambiguously excludes coverage. See Benoit v. Fuselier, 195 So.2d 679 (3d La.App., 1967) and authorities therein cited.
In Breitenbach v. Green, supra, Barnette, J., speaking for the majority very succinctly analyzed the Louisiana jurisprudence on the subject. The opinion cites Fontenot v. State Farm Mutual Insurance Company, supra; Lang v. Jersey Gold Creameries, Inc., 172 So. 389 (2d La.App., 1937); and, Shehee-Ford Wagon & Harness Company v. Continental Casualty Company, 170 So. 249 (2d La.App., 1936) and emphasizes the distinction between the issues of coverage under the policy and liability of the assured even when these issues are combined in one law suit. One claim is by the injured party against the alleged tort feasor, which action the insurer has contracted to defend. The other issue is the separate action between the insured and the insurer over the coverage and interpretation of the policy which the insured must defend.
With the above authorities in mind we look to the facts in the instant matter. Zurich contends that though its attorneys did not appear as counsel of record for Sheriff Clemmons after September 27, 1967, (and the record is clear on this point) its attorneys nevertheless bore the full blunt of the defense, not only for itself, but injected and supported several defenses for the Sheriff. The entire record, depositions, interrogatories, etc. of the Webb and Owen suits offered in evidence in this cause bears out this contention. However, as stated by the trial judge, this fact nevertheless did not negate "* * * the role that Mr. Kleinpeter played as primary counsel for Mr. Clemmons".
In Breitenbach v. Green, supra, the court specifically determined: (186 So.2d 712, 719)
"Clearly, Mrs. Green was not forced to secure her own counsel to protect her interests in the principal action by any failure or refusal of Phoenix to defend her." (Emphasis ours) *896 Such is not the case here. We have quoted above very extensively from the correspondence between Mr. Normann and Mr. Kleinpeter for the express purpose of showing that such correspondence, corroborated by the testimony adduced during the course of the trial, leads to the inescapable conclusion that the Sheriff was literally forced to engage his own counsel in defense of his potential liability to the plaintiffs or be left in limbo.[3]
The above quoted correspondence makes reference to Sheriff Clemmons' prerogative to select counsel on his behalf with respect to demands made by the plaintiffs in excess of the policy limits. Retention of counsel for this purpose would not be the responsibility of Zurich. The quoted correspondence also refers to the execution of a Non-Waiver agreement. Yet, the same correspondence consistently refers to the necessity of Sheriff Clemmons "employing separate counsel to represent your interest". In the letter of July 4, 1961, Sheriff Clemmons was told it would be necessary for him to execute the Non-Waiver agreement and yet at the same time he was told that if he did not Zurich would proceed with the defense as though the agreement had been executed. In this same letter the necessity of the Sheriff's hiring separate counsel was again called to his attention.
Viewing this correspondence in a light most favorable to Zurich it is ambiguous to say the least and considering the gravity of the situation and the possible exposure involved this ambiguity must be resolved against Zurich, justifying the Sheriff in obtaining his own counsel. If there be any doubt about the position of the Sheriff with respect to his later demanding attorney's fees for his own counsel these doubts were put to rest in Mr. Kleinpeter's letters of July 21 and November 2, 1961.
We now turn our attention to the question of quantum. Mr. Kleinpeter testified that his efforts on the liability question alone (excluding the question of coverage) consumed 601 hours at an hourly rate of $40.00 per hour or the sum of $24,040.00. It was stipulated that he entailed out of pocket expenses totaling $118.40. These sums total $24,158.40, the amount of the judgment of the trial court. Counsel for Zurich alternatively contends that Mr. Kleinpeter failed to bear the burden of proof that these numbers of hours were actually spent in his preparation for the defense of Sheriff Clemmons. The trial judge found that the claim of Mr. Kleinpeter was supported by the evidence and was reasonable under the circumstances. It is to be noted that from the date of the accident in 1956 until September, 1961 attorneys for Zurich accumulated an extensive file. When Mr. Kleinpeter became counsel of record for Mr. Clemmons it became necessary that he completely familiarize himself with every aspect of the two cases. While Mr. Kleinpeter acknowledged that he saw no reason to repeat questions asked of witnesses by Zurich's attorneys, he was nevertheless present, prepared and qualified to do so should the occasion arise.
In the Benoit and Breitenbach cases it was held that the measure of damages to be assessed against an insurer who fails to defend under its policy thereby breaching its contractual obligation includes reasonable attorney's fees.
The trial court observed that Mr. Kleinpeter's concern with litigation in the Webb and Owen cases lasted from September of 1961 until March of 1968, consuming nearly seven years of time. He further stated that 601 hours was equivalent to seventy-five days of work or nine or ten days per year or an average of one day per month during the period of protracted litigation. The $40.00 per hour rate was not contested. We find no error on the part of *897 the trial judge in his determination of the sum he determined that plaintiff was entitled to receive as reasonable attorney's fees.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at appellant's costs.
Affirmed.
LANDRY, Judge (dissenting).
In my opinion, the majority have correctly recognized the law applicable to this controversy, but have erred in applying the pertinent rules to the facts of record.
It is settled that an insurer may deny coverage without incurring liability to its insured for attorney's fees, provided it simultaneously furnishes its insured a defense on the merits. Fontenot v. State Farm Mutual Insurance Company, La. App., 119 So.2d 588. Also, an insured who employs counsel for the sole purpose of litigating a coverage question raised by his insurer may not recover, from his insurer, attorney's fees contracted for such purpose. Breitenbach v. Green, La.App., 186 So.2d 712.
The majority properly notes the distinction between the issue of coverage under a policy and the alleged liability of the insured when these separate and distinct issues are presented in a single action. The latter question is primarily between the injured party and the alleged tort feasor. The former is essentially between the insured and insurer and concerns whether the risk sued upon is one against which policy coverage affords protection to the insured thus requiring the insurer to defend the insured on the merits. Breitenbach v. Green, above.
In substance the majority have concluded the correspondence between the parties is tainted with such uncertainty as to lead the insured reasonably to believe the insurer would not defend him on the merits. I disagree with this finding. In my judgment, the fair import of all the correspondence is that Zurich advised its insured he was being sued in excess of his policy limits and should retain counsel to represent him in this regard. For such attorney's fees the insurer is not liable. Additionally, the insurer advised its insured that coverage would be made an issue and that, with respect to this particular question, a conflict of interest was raised between insured and insurer. The correspondence made it clear the insured should employ counsel to defend himself on the question of coverage. For such attorney's fees, the insurer is not liable.
The majority apparently place considerable emphasis on the insurer's letter of July 4, 1961, which suggested that the insured should engage counsel to protect his own interests. This recommendation was obviously intended to apply only to the question of coverage. I so find because it is immediately followed by the statement that if the insured did not retain counsel, the attorneys for the insurer would proceed with the defense of the cases to the best of their ability.
I concur in the majority holding that the record in the Webb and Owen cases, made part of this record, supports the conclusion that the insurer's attorneys "bore the full blunt of the defense, not only for itself, but injected and supported several defenses for the Sheriff." However, I deem this finding patently inconsistent with the majority conclusion that, nevertheless, Mr. Kleinpeter was primary counsel for the insured in defending on the merits and, consequently, the insurer should pay his fee.
The majority emphasizes the inactivity of the insurer's attorneys on the insuredgs behalf subsequent to September 27, 1967. Under the circumstances, this was a matter of no moment. The case had been fully tried and was on appeal. It is significant that the judgment rendered by the trial court exonerated the insured from personal liability. For this reason Mr. Kleinpeter elected not to appeal on behalf of the insured.
*898 I find that the record discloses that the insurer defended its insured on the merits while simultaneously raising the defense of lack of coverage. This the insurer was entitled to do without incurring liability for attorney's fees to its insured.
The test is not whether the insured engaged private counsel to assist him in the defense, but rather whether the insured was compelled to engage counsel for such purpose because of the insurer's refusal to defend on the merits. I find no justification in the record for holding that the insured herein was compelled to hire counsel for his own defense because his insurer declined to afford a defense.
The Sheriff's own testimony is to the effect he engaged Mr. Kleinpeter to represent him only in the issues of excess demand and the insurer's plea of lack of coverage. The record indicates that such action as Mr. Kleinpeter may have taken with respect to defending the action on the merits was purely incidental. Being present to represent the insured on the issues of excess demand and lack of coverage, Mr. Kleinpeter did participate in the defense to a very minor degree. He was not required to do so, however, because of defendant's refusal to defend on the merits.
The judgment of the trial court should be reversed and set aside. I dissent from the majority ruling.

ON APPLICATION FOR REHEARING
PER CURIAM.
Defendant in its application for a rehearing has cited four reasons why the application should be granted. We have carefully reviewed the application and are of the opinion that the application should be denied. However, the fourth assignment of error warrants comment. In this assignment appellant contends that the trial court awarded plaintiff sums in excess of that pleaded by plaintiff, namely, plaintiff had prayed for $22,500 for legal fees and the trial court awarded appellee judgment in the amount of $24,040 or $1,540 in excess of the amount claimed. We have reviewed the original and supplemental petitions of appellee and disagree with the contention now raised by appellant. In the original petition appellee asked, inter alia, for attorneys fees in the amount of $35,000. An Exception of Vagueness was filed by appellant and appellee amended his petition to particularize the $35,000 as follows:

"(a) For legal expenses incurred prior to and
 through the trial of the matters referred to,
 but not including anything subsequent to
 the completion of the trial $22,500.00
 (b) For legal expenses incurred and to be incurred
 for preparation of trial briefs, any
 appeal, and final disposition 10,000.00
 (c) For expenses incurred in duplicating depositions,
 pleadings, statements, costs and related
 items 2,500.00
 __________
 $35,000.00"

Thus, it is clear to us that appellee's total claim sought $32,500 and that the amount awarded by the trial judge was well within these limits.
Appellant further has asked that this application for rehearing be considered en banc by the court. This request is also denied.
*899 Baton Rouge, Louisiana, January 30, 1970.
 Paul B. Landry, Jr.
 C. Lenton Sartain
 Frederick S. Ellis
We concur in the decision not to consider appellant's motion for a rehearing en banc.
Baton Rouge, Louisiana, January 30, 1970.
 Morris A. Lottinger
 Horace R. Reid
 Fred A. Blanche, Jr.
NOTES
[1] "As respects such insurance as is afforded by the other terms of this Policy, the Company shall:

(a) defend in his name and behalf any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;"
[2] See Note 1, Supra.
[3] Defined by Webster's Third New International Dictionary (Unabridged) as "A region believed to exist on the borders of hell as the abode of souls barred from heaven through no fault of their own."