440 So.2d 984 (1983)
BUILDING SPECIALTIES, INCORPORATED, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendant-Appellants.
No. 83-234.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
Rehearing Denied December 7, 1983.
*985 Rivers & Willson, Larry W. Rivers, Gist, Methvin, Hughes & Munsterman, DeWitt T. Methvin, Jr., Alexandria, for defendant-appellants.
Bolen & Erwin, James A. Bolen, Jr., Alexandria, for defendant-appellee-appellant.
Ford & Nugent, Howard N. Nugent, Jr., Alexandria, for plaintiff-appellee.
Before DOUCET, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Plaintiffs in these consolidated actions seek property damage (Docket No. 83-234) and damages for personal injury 440 So.2d 989, arising from a collision on September 7, 1981, between a 1980 Chevrolet Chevette owned by John A. Caesar and operated by James H. Clark, and a Superior Dodge motorhome owned by Building Specialties, Inc., and operated by Walter D. Lafargue. The accident occurred in Sabine Parish when the 1980 Chevrolet Chevette ran a stop sign at the intersection of Louisiana Highways 476 and 6 and collided with the motorhome. James H. Clark, the alleged driver of the Caesar vehicle, State Farm Mutual Automobile Insurance Company as the insurer of John A. Caesar, and Fireman's Fund Insurance Company as the insurer of James H. Clark were made defendants in both suits.
James H. Clark filed a third party demand in both suits against Fireman's Fund Insurance Company demanding payment for any judgment for which he may be cast and for his attorney's fee.
With the exception of the third party demand and the amount of damages sustained by Building Specialties, Inc. (which were stipulated) all issues were tried by a jury. In response to specific interrogatories the jury returned a verdict in plaintiffs' favor and fixed Walter D. Lafargue's personal injury damages at $1,500.
*986 The trial judge rendered its judgment on the third party demand in favor of third party plaintiff, James H. Clark, and against third party defendant, Fireman's Fund Insurance Company, awarding attorney fees in the sum of $2,350 plus costs.
Timely appeals were taken on behalf of State Farm Mutual Automobile Insurance Company and Fireman's Fund Insurance Company.
This appeal presents three issues:
1. Whether the jury erred in ruling that James H. Clark was driving the 1980 Chevrolet Chevette at the time of the accident;
2. Whether the jury erred in holding that the driver of the 1980 Chevrolet Chevette owned by John A. Caesar and insured by State Farm Mutual Automobile Insurance Company had the express or implied permission of the named insured, John A. Caesar, to use said automobile; and
3. Whether the trial judge erred in ruling that Fireman's Fund Insurance Company had a duty to defend James H. Clark.

DETERMINATION OF DRIVER
There is a dispute as to who was driving the 1980 Chevette at the time of the accident. Throughout his pleadings James H. Clark denied that he was the driver of the vehicle. During the trial he exercised his fifth amendment rights in response to all questions relating to the accident. (There was a pending criminal appeal against Clark for negligent homicide.)
At the time of the accident the only other occupant of the Chevette was Mark Fruge who testified that James H. Clark was the driver. The state trooper who investigated the accident testified that James H. Clark told him at the accident scene and again later at the Sabine Parish Sheriff's office that he was the driver. Another state trooper testified that when he went to the hospital to obtain a blood sample Clark stated he was the driver of the vehicle.
These testimonies were substantiated by two witnesses to the accident who identified James H. Clark as being at the steering wheel of the Chevette just after the accident.
Fireman's Fund introduced the testimony of a witness (not present at the accident) who stated that thirty minutes before the accident he observed two young men switch drivers in a white vehicle. This occurred about 10 miles from the accident site. He stated that the person with the longer, lighter colored hair (Mark Fruge) became the driver and the individual with the darker, shorter hair (James H. Clark) became the passenger.
At trial only Fireman's Fund made the driver identification an issue. State Farm conceded that James H. Clark was the driver of the Caesar Chevette at the time of the accident.
A reviewing court must give great weight to the factual conclusions drawn by the trier of fact, and where there is conflict in testimony reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed. Johnson v. Alexander, 406 So.2d 1378 (La.App. 3rd Cir.1981) writ granted 412 So.2d 88, case reversed on other grounds 419 So.2d 451 (La.1982); Smith v. Town of Logansport, 395 So.2d 888 (La.App. 2nd Cir.1981), writ denied 400 So.2d 1379 (La.1981). Therefore, we affirm the jury determination that James H. Clark was the driver of the Chevette at the time of the accident.

PERMISSION TO DRIVE
The record reveals that Moxie Caesar (the son of John A. Caesar), Mark Fruge, and Mark Matthews rode in a 1980 Chevrolet Chevette to the Toledo Bend area near Many on the evening preceding Labor Day where they were joined by Joey Matthews, James H. Clark, and two girls. They stayed in two trailer homes at Toledo Bend and spent most of the night drinking beer. James H. Clark and Mark Fruge woke up before daylight on Labor Day to go dove hunting. Clark and Fruge first requested the use of the truck belonging to Joey Matthews *987 who declined because he needed it to go fishing. They then sought and received Moxie Caesar's permission to use the Chevette. Fruge left the trailer site driving the Caesar vehicle. Fruge drove a short distance to a point at Toledo Bend where he and Clark hunted doves in a goat weed area. Since there were no doves they shot beer cans for about 15 minutes and then drove toward Many and Zwolle. They purchased a bottle of Jack Daniels Whiskey which they consumed to the point of intoxication. For several hours they drove around the Toledo Bend area switching the driver-passenger positions at least once. Their jaunt ended when Clark ran the stop sign at the intersection of highways 476 and 6 and struck the motorhome causing it to cross the centerline and strike another vehicle.
State Farm and Fireman's Fund contend that the operator of the Chevette at the time of the accident was not an omnibus insured under their respective automobile insurance policies.
State Farm and Fireman's Fund rely on Rogillio v. Cazedessus, 127 So.2d 734 (La. 1961), for support of their contention. Plaintiffs rely on American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969).
Here, the alleged omnibus insured driver, Clark, borrowed an automobile from Moxie Caesar, the twenty-one year old son of the named insured, John Caesar. This automobile was under the general control and supervision of Moxie Caesar. Moxie's control and supervision was allegedly restricted by John Caesar's instructions to his son not to let anyone else use the vehicle.
The general rule is that the child of the named insured cannot violate the express restrictions of the named insured by allowing another to use the insured vehicle so as to cause the user to become an omnibus insured. Rogillio, supra; Devall v. State Farm Mutual Insurance Company, 249 So.2d 282 (La.App. 1st Cir.1971); Lee v. Allstate Insurance Company, 274 So.2d 433 (La.App. 1st Cir.1973); Coco v. State Farm Mutual Automobile Insurance Company, 136 So.2d 288 (La.App. 3rd Cir.1961). Appellants stress that the jury's determination that the driver of the Chevette was using it with the express or implied permission of the named insured was manifestly erroneous and should be set aside.
Initially Moxie Caesar's use of the Chevette was not broad, free and unrestricted. His use of the automobile was subject to his father's instructions that no one other than Moxie was to drive the car. On the other hand Moxie testified that he often let Mark Fruge drive his Chevette. Moxie's father testified that he had seen Moxie's girl friends driving the Chevette.
Moxie testified that he used the Chevette as his car. He maintained the vehicle and paid his father $40 a week for the car note. Moxie's father denied this asserting that he maintained the vehicle and paid the entire car note.
Moxie's father was firm in his assertion that it was a family policy, extending to the years when Moxie's older brothers used the family cars, that only family members were permitted to use the cars. Yet in direct contradiction, Mrs. Williams, a friend of John Caesar, stated that although she was not a family member, Moxie's father loaned her the family autos without restriction.
We find this case is an exception to the general omnibus driver rule. This exception occurs when the first permittee (Moxie) violates the restrictions of the named insured (John) to the knowledge of the named insured who makes no significant protests. In this situation the named insured is said to have impliedly consented to the second permittee's use and the second permittee is classified as an omnibus insured. Devall, supra; Butler v. Pardue, 415 So.2d 249 (La.App. 2nd Cir.1982).
In the instant case the named insured was aware that his son had allowed others to drive the vehicle. No showing was made that John Caesar significantly protested these violations. We find that the jury was not clearly wrong in concluding *988 that this exception was applicable to the instant case.
Fireman's Fund also contends that the jury erred in concluding that Clark reasonably believed that he had the express or implied permission of the owner to use the vehicle. Clark was under the impression that Moxie owned the Chevette. Moxie testified he would not have loaned the car to Clark since he did not know Clark that well. He meant to loan the car only to Fruge. Moxie did not communicate this restriction to Fruge. When Fruge asked Moxie for the use of the car, he stated: "Well, I asked Moxie if we could use his car to go [hunting] and he said we could." Fruge felt justified in asking Clark to drive because Fruge felt he was too drunk to drive. Fruge also stated that on previous occasions, he drove Moxie's car when Moxie was too drunk to drive. The facts of this case show that Moxie had general unrestricted use of the car and he in turn loaned his car to others unrestricted. We find that the jury was not clearly wrong in concluding that Clark reasonably believed that he had the express or implied permission of the owner to use the car.
The language of the Fireman's Fund insurance contract regarding non-owned automobiles provides broader coverage than the omnibus clause. Under the Fireman's Fund policy an insured is protected by the non-owned automobile clause not only when using it with the owner's permission, but also when reasonably believed to be with the owner's permission. The contract language "reasonable belief" provides a subjective standard regarding a determination of permission. Coverage is provided under this language as long as the permittee reasonably believed that he had the owner's permission, whether or not the person granting permission had actual authority to transmit such permission. Johnson v. Aetna Casualty and Surety Co., 274 So.2d 769 (La.App. 3rd Cir.1973).

DUTY TO DEFEND
At the time of the accident Fireman's Fund had issued an automobile liability policy to Jerald Clark, father of the defendant, James H. Clark, which afforded coverage to James H. Clark. The defendant, James H. Clark, filed a third party demand against Fireman's Fund when they refused to defend him against plaintiffs' action.
In American Home Assurance Company v. Czarniecki, supra, the court held that an insurer's duty to defend its insured is broader than its liability for damage claims. In accord see: ADA Resources v. Don Chamblin & Associates, 361 So.2d 1339 (La.App. 3rd Cir.1978); Lumbermans Mutual Casualty Co. v. Rollings, 355 So.2d 1041 (La.App. 4th Cir.1978); Thomas v. Appalachian Insurance Company, 335 So.2d 789 (La.App. 1st Cir.1976); Clemmons v. Zurich General Accident & Liability Insurance Company, 230 So.2d 887 (La.App. 1st Cir.1969). The allegations of plaintiff's petition determine the insurer's duty to defend suits brought against its insured. Clemmons supra; ADA Resources, supra. The insurer is under an obligation to defend its insured regardless of the outcome of the case if, assuming plaintiff's allegations are true, there is both coverage under the policy and liability to plaintiff. ADA Resources, supra; Benoit v. Fuselier, 195 So.2d 679 (La.App. 3rd Cir.1967). Unless plaintiff's petition unambiguously excludes coverage, the insurer is under a duty to defend its insured. Thomas, supra; Benoit, supra. Applying these tests to the case at bar, we find the plaintiffs' petitions alleged sufficient facts against James H. Clark which obligated Fireman's Fund to furnish a defense for Clark. Fireman's Fund contends that since Clark did not include State Farm in his third party demand, Clark waived his right to recover any attorney's fees since State Farm is primarily liable and Fireman's Fund secondarily liable, thus Fireman's Fund can only be held accountable after the policy limits of State Farm's policy are exceeded. Fireman's Fund relies on American Home Assurance Co. v. Czarniecki, supra, for its contention. In Czarniecki, both the primary and secondary insurers were sued and both insurers were found to owe a duty to defend the suit. *989 Czarniecki does not stand for the proposition that if the primary insurer is not sued and only the secondary insurer is sued, the attorney's fees are waived. Notwithstanding Clark's failure to third party State Farm, we find Fireman's Fund owed Clark a duty to defend and its failure to defend Clark was a breach of contract entitling him to the award of $2,350 plus costs.
For the foregoing reasons the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellants, Fireman's Fund Insurance Company and State Farm Mutual Automobile Insurance Company, one-half to each.
AFFIRMED.