257 So.2d 785 (1971)
Gilbert HARANG
v.
Joseph SPARACINO and Thurston National Insurance Company.
No. 4555.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1971.
On Rehearing February 7, 1972.
*786 Francis J. Demarest, Jr., and Horald M. Rouchell, New Orleans, for Joseph Sparacino.
John M. Holahan, New Orleans, for Jennie Cadaro.
Reuter, Reuter & Schott (Patrick M. Schott), New Orleans, for Thurston National Ins. Co.
Alexander C. Cocke, Jr., New Orleans, for Signal Ins. Co.
Peter J. Vernaci, New Orleans, and R. M. Donahue, Metairie, for Gilbert Harang.
Leach, Grossel-Rossi & Paysse (M. N. Grossel-Rossi), New Orleans, for Travelers Ins. Co.
Before REDMANN, GULOTTA and BOUTALL, JJ.
BOUTALL, Judge.
These appeals arise out of a collision between two automobiles. In addition to the usual issues of negligence of the drivers and quantum, there are questions of insurance coverage to be determined. It is therefore helpful to relate the procedural aspects of the case.
The original petition was filed by plaintiff Gilbert Harang against Joseph Sparacino, an uninsured motorist, and Thurston National Insurance Company, Mr. Harang's insurer under the uninsured motorist provisions of his policy. The petition alleges that Mr. Sparacino negligently made a left turn into plaintiff's path causing a collision between them.
One defendant, Mr. Sparacino, filed an answer and a reconventional demand against plaintiff for damages. The other defendant, Thurston National Insurance *787 Company (hereinafter called Thurston) filed an answer alleging that the policy of insurance it sold to Mr. Harang had been cancelled eight days prior to the accident.
A petition of intervention was filed by Jennie Cardaro, a passenger in Mr. Sparacino's car, to recover for her injuries against Mr. Harang, Thurston as his insurer, and Mr. Sparacino. She later filed a supplemental petition of intervention against Signal Insurance Company alleging it also was Mr. Harang's insurer. Thurston and Signal filed other pleadings in response to the intervention, not pertinent to these appeals, and then filed answers in which both companies claimed cancellation of their respective policies prior to the collision.
Another intervention was filed by Travelers Insurance Company to recover the amount paid to Mr. Harang for automobile damage under its collision policy.
Finally, Thurston filed a third party pleading against Mr. Sparacino.
The trial judge found that Mr. Sparacino was negligent in making his left turn, found that Mr. Harang was not negligent, and found that Thurston's uninsured motorist policy was still in effect. He therefore rendered judgment as follows:
(1) in favor of plaintiff, Mr. Harang, against Mr. Sparacino and Thurston, dismissing Mr. Sparacino's reconventional demand.
(2) in favor of intervenor, Jennie Cardaro, against Mr. Sparacino, but dismissing her claim against Thurston and Signal.
(3) in favor of intervenor, Travelers, against Mr. Sparacino.
(4) in favor of third party plaintiff, Thurston, against Mr. Sparacino.
From this judgment Joseph Sparacino and Thurston have taken suspensive appeals and Jennie Cardaro has taken a devolutive appeal.
The first issue is the negligence of the drivers of the vehicles involved. The trial judge found that:
"the proximate cause of the accident was Mr. Sparacino's gross negligence in trying to cross the south-bound lanes of Airline Highway with Mr. Harang's car approaching."
The collision occurred on the Airline Highway (U.S. 61) at its intersection with Farrar Street in Kenner, Louisiana. In this area the Airline Highway is a divided roadway with two traffic lanes going in each direction. Plaintiff was driving toward New Orleans in the far right lane while defendant was driving away from New Orleans, with the intention of making a left turn off the Airline Highway into Farrar Street.
Defendant testified that as he began to attempt his left turn, traffic on the opposite roadway was heavy so he stopped his vehicle in the narrow neutral ground area awaiting a clear opportunity to cross. After a number of vehicles passed, he felt that the way was clear and proceeded across the New Orleans bound lanes and just as he entered Farrar Street, nearly clearing the Airline Highway, he was struck by plaintiff's car. He did not observe plaintiff's car prior to actual collision although he looked and could see up the highway a distance equivalent to several blocks.
Plaintiff's version of the collision was that, as he approached the intersection, traveling in the right lane at approximately the speed limit, there was another vehicle ahead of him in the left lane, which had passed him and was heading in the same direction. He stated that defendant's vehicle, in making its left turn, passed behind that vehicle and immediately in front of his, so that he had no opportunity to avoid the collision although he applied his brakes and tried to turn left behind defendant's vehicle to avoid colliding with it.
Each driver, in support of his testimony, produced as a witness the passenger occupying *788 the front seat of his vehicle. In general, each passenger corroborated his driver's testimony, but the testimony of Jennie Cardaro, passenger in defendant's car, is the more noteworthy in two aspects.
First, she testified that as the defendant began making his left turn, the plaintiff's car was coming over the top of a nearby overpass. This overpass begins its ascent more than one block from the intersection and, of course, there is a considerable distance from its beginning to its crest. It is difficult to believe that a vehicle could travel from the crest to this intersection in the short time it takes to traverse two lanes of traffic. Secondly, despite the distance involved, she testified that she warned defendant to be careful and that the accident happened "quick as a flash as far as I was concerned it was too quick".
In addition to the four witnesses mentioned above, the policeman who investigated the accident, State Trooper Ronald Frisard, testified. He related his findings as to skid marks and debris, and statements he received from both drivers, and concluded:
"My investigation revealed that vehicle number 1 (defendant) apparently made a left hand turn at which time he plowed directly into the path of vehicle number 2 (plaintiff)."
He testified that the statement of defendant was to this effect:
"Again just to the best of my recollection Mr. Sparacino apparently to my knowledge was that he stated he misjudged this oncoming Harang vehicle. He thought he had enough time to make that left turn in his opinion it was further down the road than he thought it was."
There is ample evidence to justify the finding of the trial judge that defendant made a left turn without ensuring that the way was clear, and that this was negligence which was the proximate cause of the collision. In view of the well-settled jurisprudence requiring a high degree of care to be exercised by a motorist making a left turn, we agree with the court's conclusion.
We now turn to a consideration of issues posed by the various insurance policies.
As mentioned above, the primary suit was filed by Gilbert Harang against defendants Joseph Sparacino and Thurston National Insurance Company. Thurston had issued to Gilbert Harang a policy covering the policy period from May 20, 1969, to May 20, 1970, providing coverage to him in the operation of a 1969 Dodge Charger automobile, the various coverages being bodily injury liability, property damage liability, automobile medical payments and uninsured motorist coverage. It is conceded by all parties that the insurance policy in question is surplus line insurance under the insurance code of the State of Louisiana. The plaintiff seeks to hold Thurston responsible under the uninsured motorist coverage afforded by the policy. The sole issue in connection therewith is whether or not the policy had been properly and effectively canceled by Thurston prior to the accident.
The facts regarding the policy of insurance are that on May 20, 1969, Harang applied for automobile liability insurance with his agent, having had a previous policy with Signal Insurance Company canceled on that date. His agent placed insurance with Thurston on May 20, as a surplus line insurer under the provisions of LSA-R.S. 22:1251 et seq. For underwriting reasons, Thurston sought to cancel the policy and allegedly mailed a notice of cancellation to Harang on June 2, 1969, addressed to him at the address shown on the policy, informing him that the policy would be canceled effective June 14, 1969. The accident happened on June 22, 1969, and if this attempt at cancellation was effective, there was no policy in existence at the time of the accident, and Thurston cannot be cast in judgment. However, if the purported cancellation was not effective, then the policy would still have been in force and Harang would be entitled to recover against Thurston. *789 The trial court concluded that the cancellation was ineffective both because Harang was not aware of the attempted cancellation and because R.S. 22:636.1 requires a twenty day notice of cancellation by surplus line insurers, the same as provided for authorized insurance companies.
Our attention is first directed towards the provisions of the insurance policy concerning cancellation. The policy provides as follows:
"This policy may be canceled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation (sic) shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation (sic) shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancelation (sic) stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing."
In the absence of statutory provision or other law to the contrary, insurance companies as well as individuals have the right to impose whatever conditions they please upon their obligations, provided such conditions are not inconsistent with public policy; the courts have no right to add anything or take anything away from such contracts. Borne v. Dillon, 201 So.2d 115 (La.App. 4th Cir.1967). Thus our first point of determination is whether the policy provisions apply, or whether they are in conflict with applicable law.
It is the contention of appellee that the policy provisions in the surplus line policy must comply with both statutory law and state jurisprudential law, and are further governed by the requirements of the Louisiana Insurance Code, particularly with regard to notice of cancellation. He refers us to the applicable statutes on cancellation, LSA-R.S. 22:636 and 636.1, pointing out that there is contained therein no distinction between surplus line and authorized insurance, and in this connection refers us to LSA-R.S. 22:1259, and the case of Gray & Co., Inc. v. Stiles et al., 221 So. 2d 832 (La.App. 1st Cir.1969). We find it unnecessary at this point to decide whether there is such a distinction in this case for the simple reason that the policy itself contains the following provisions:
"25. Terms of Policy Conform to Statute.
Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes."
This provision of the policy makes it quite clear that the Louisiana Statutes governing insurer-insured relationships do apply, and thus we must discuss the provisions of the policy and the applicable law.
LSA-R.S. 22:636 contains the general provisions for cancellation of policies by the insurer, and has remained unchanged since the enactment of Act No. 25 of 1958. It provides in general that written notice of cancellation must actually be delivered or mailed to the insured or to his representative in charge of the subject of insurance, and that the affidavit of the individual making or supervising such a mailing shall constitute prima facie evidence of such facts of mailing as are therein affirmed. The jurisprudence interpreting these provisions of the statute is that the evidence to prove proper mailing is rebuttable by positive evidence of lack of delivery or receipt and that the burden is upon the insurer to establish facts which relieve or limit its liability for insurance coverage. Breckenridge v. Dalon, 229 So. 2d 221 (La.App. 4th Cir. 1969); Breitenbach v. Green, 186 So.2d 712 (La.App. 4th Cir. 1966).
*790 The legislature of Louisiana, in an effort to afford more protection to purchasers of automobile liability insurance policies, passed Act No. 632 of 1968, which added to the Insurance Code an additional section entitled R.S. 22:636.1, providing for certain restrictions and regulations with respect to the cancellation of policy contracts on motor vehicle insurance under certain conditions. By the definition contained in subsection A(2) uninsured motorist coverage is included within the policies subject to the provisions of this act. Since this act, in subsection (3), recites that all laws or parts of laws in conflict herewith are hereby repealed, it is apparent that if the provisions of 636.1 apply, they would control rather than section 636, the general cancellation statute. The trial court held that section 636.1 did apply and required a twenty day notice to be given, and with that conclusion we must disagree.
In an analysis of the provisions of R.S. 22:636.1, we note that subsection A thereof contains definitions of certain terms and provisions of the act. Subsection B recites that a notice of cancellation of a policy shall be effective only if it is based upon one or more of certain specified reasons none of which is the reason contained in this case, that is "underwriting reasons".[1] However, subsection B does not apply, by its own terms, to any policy which has been in effect less than sixty days at the time notice of cancellation is mailed, and this policy was only in effect for some thirteen days at the time of the mailing. Therefore, subsection B does not apply to the instant case.
Subsection C thereof, sets out the applicable periods from notice to date of cancellation required for effective cancellation.[2] However, this subsection contains within it the restriction that the twenty day notice required is only for those policies to which subsection B applies.
An examination of the provisions of section 636.1 does not reveal any prescribed period of prior notice of cancellation for the policy in question, it not being a renewal policy, and having been in effect only thirteen days. The only prior notice that our law could require is that set forth in the general cancellation section, LSA-R.S. 22:636, which provides for not less than five days notice of cancellation. In as much as the policy by its terms provides *791 for a ten day prior notice of cancellation, obviously, the policy provisions will prevail under the circumstances.
This brings us to a consideration of the other issue involved in connection with the cancellation, and that is the method and proof of notice required. In support of its contention that it mailed proper notice to the insured, Thurston introduced evidence in the form of testimony by Michael Bowler, the supervisor of this type of policy, that he personally brought to the post office and mailed the notice of cancellation to the insured at the address as shown on the policy. To substantiate this testimony, a copy of the document so mailed, together with the post office stamp and certificate of mailing, was introduced into evidence, as well as a copy which had been forwarded to the agent, Oscar Autin Insurance Agency, who placed the insurance. Mr. Autin testified that he had received a copy of the notification, although he could not recall when. As opposed to this, the insured, Gilbert Harang, testified that he never received the notice of cancellation, although he admitted that this was his correct address and that he received other mail addressed to that address.
Based upon the facts above related, the trial court found that Harang did not receive notice of the cancellation and concluded that the attempted cancellation was ineffective. We note that in a similar state of facts in two cases, our courts have reached different results as to the effectiveness of the cancellation. We refer to the case of Breckenridge v. Dalon, 229 So.2d 221 (La.App. 4th Cir. 1969) and the case of Townzen v. Allstate Insurance Company, 188 So.2d 474 (La.App. 3rd Cir. 1966). Both of these cases were interpreting the provisions of LSA-R.S. 22:636. The difference in result is explained by the fact that in the Breckenridge case, the trial court had greater proof of mailing, including a post office receipt as here, and so found that the cancellation was effective, whereas in the Townzen case, where the only real proof of mailing was an affidavit of the mailroom supervisor, the trial court held that the cancellation was not effective. Each appellate court then applied the principle that the question was a matter for consideration of the trial judge, and that the appellate court could find no error in his determination.
In the instant case, the defendant insurer contends that it is irrelevant whether the insured received the notice of cancellation or not. The insurer argues that the proper mailing of the notice is the only issue, and relies upon two (2) bases: (1) That the policy itself recites, "The mailing of notice as aforesaid shall be sufficient proof of notice.", and that the policy provisions simply require that the "policy may be canceled by the company by mailing to the named insured at the address shown in this policy . . ."; and (2) That the Louisiana Statutory Law requires mailing only as a precedent to cancellation and not receipt of the notice.
We have been referred to a number of cases involving the interpretation of the provisions of LSA-R.S. 22:636 concerning the mailing and non-receipt of notices of cancellation. The statute itself does not mention receipt, but provides that cancellation may be effected only upon compliance with the requirement of written notice of cancellation either actually delivered or mailed to the insured. An examination of the jurisprudence to which we have been referred discloses that there is no case in which our appellate courts have held that it was necessary that the insured actually receive the mailed notice, although lack of receipt has been considered as evidence which could rebut an affidavit of mailing, which, if not rebutted, is "evidence" of mailing. Townzen v. Allstate Insurance Company, supra.
It would appear that possibly some confusion has arisen on the question of proof of proper mailing versus receipt out of reliance in many cases on the oft quoted statement in Skipper v. Federal Insurance *792 Company, 238 La. 779, 116 So.2d 520 (1959), appearing at 116 So.2d 523:
"While it is true that there is a prima facie presumption of delivery under the statute quoted above upon proof of proper mailing, this presumption is rebuttable by positive evidence of lack of delivery or receipt. Paz v. Implement Dealers Mutual Insurance Company, La.App., 89 So.2d 514. . . ."
The last portion of that paragraph is not generally quoted:
". . . Not only must there be proof of proper mailing but the statute provides that this notice must be `directed to the addressee at his last address as known to the insurer or as shown by the insurer's records' in order for the notice of cancellation to be effectual. (Italics ours.)"
We note that the court in Skipper cites the Paz case as authority for the first statement. However, an examination of that case clearly indicates that the controlling factor in Paz was the fact that the notice of cancellation itself required receipt[3] and the court went on to specifically say that the point of law relative to proper mailing as opposed to actual receipt was not posed for its consideration.
Additionally we note that the court in Skipper did not reach its holding on the issue of receipt but rather on the factual finding that the notice was not properly mailed because it was not sent to the last known address of the insured. A consideration of the entire paragraph quoted from Skipper together with the factual situation therein recited leads us to conclude that Skipper does not stand for the principle that actual receipt is required, but that evidence to prove proper mailing is required and that this evidence is rebuttable by positive evidence of lack of delivery or receipt.
Of course, it has been presumed that the actual mailing of a document causes its delivery and receipt in due course by the addressee. Upon this basis our courts have held, in some factual situations, that the trial court may consider that the proven failure of receipt could apparently lead to the equally as plausible presumption that the document was never actually mailed. Yet where proof of mailing is strong, as in Breckenridge, supra, the mere denial of receipt by the insured is not sufficient to invalidate the cancellation, which is effective if "actually delivered or mailed" as set out in section 636. We do not believe that section 636.1, providing simply that the mailing itself is sufficient proof of notice, is in conflict with section 636 in this respect, as Thurston argues.
Referring again to the reasons for judgment of the trial court, we note that in his reasons for judgment the trial judge did not find that the notice of cancellation was not mailed, but instead found that, in view of the testimony of the insured that he did not receive that particular letter, and the fact that there was no notification of the insured either personally or by telephone, Mr. Harang was not "aware of the attempted cancellation." But neither section 636 nor section 636.1 requires proof of receipt of the notice, but only proper mailing. A holding that the insured was not aware of the notice of cancellation is insufficient to prevent the effectiveness of the cancellation. See for example Burrough v. United States Casualty Company, 170 So.2d 159 (La.App. 4th Cir. 1964) wherein the insured was hospitalized at the time of mailing of the notice and apparently not aware of its being sent.
The contention of Thurston in this case that it did properly mail the notice is amply borne out by the testimony of its witness and the post office receipt previously referred to. A copy of the notice *793 of cancellation was received by the agent. We hold that the cancellation was properly mailed and that it became effective on June 14, 1969. Since the accident occurred on June 22, 1969, the policy was not in effect and there is no liability to be imposed on Thurston. The judgment of the trial court, insofar as it casts Thurston in judgment, should be reversed and Thurston should be dismissed from the suit.
Since Thurston is now dismissed from the suit and is not cast in judgment, its third party demand against Sparacino becomes unnecessary and should be dismissed.
All of the issues raised by the other parties to these appeals have been answered by the findings of the court hereinabove, but mention should be made of the claim of intervenor Jennie Cardaro against Signal Insurance Company. Jennie Cardaro, the passenger in Mr. Sparacino's vehicle, sued for her personal injuries and named as the defendant amongst others, the Signal Insurance Company, which had carried automobile insurance coverage on Gilbert Harang prior to the time that Thurston issued its policy, having canceled on May 20, 1969. Since we find no negligence on the part of Gilbert Harang, obviously there is no liability on the part of his insurers, therefore, we find it unnecessary to determine whether the cancellation made by Signal Insurance Company was effective or not. Such an inquiry would be pertinent if Mr. Harang had made Signal also a party defendant, however, this is not the case.
It is therefore ordered, adjudged and decreed that the amended judgment of the trial court is affirmed with the exception of those portions of the judgment affecting Thurston National Insurance Company as follows:
The judgment in favor of petitioner Gilbert Harang against Thurston National Insurance Company is reversed and annulled, and judgment is now rendered in favor of defendant, Thurston National Insurance Company, against plaintiff, Gilbert Harang, dismissing his demand against said defendant.
The third party demand of Thurston National Insurance Company against third party defendant, Joseph Sparacino, is now dismissed.
The trial judge cast Sparacino and Thurston for costs. In view of Thurston's dismissal from the suit and because of the fact that Harang, not Sparacino, brought Thurston into the suit, it appears equitable and just to now assess Thurston's costs against Gilbert Harang, both in the trial court and on appeal. All other costs to be assessed against the party cast in judgment. C.C.P. art. 2164.
Affirmed in part, reversed in part.

ON REHEARING
This application for rehearing is made solely on the issue of quantum. Judgment was given intervenor-appellant against defendant-appellant Sparacino in the amount of $250 for personal injuries, denying her claim for reimbursement for medical payments.
Mrs. Cardaro, a 65-year-old woman, was a guest passenger in the car driven by Sparacino, whose negligence was held to have caused the automobile accident forming the basis of the suit. As a result of that accident, she received, as is borne out by the testimony of Dr. Santo Lo Coco, her physician, 3 or 4 fractured ribs, and injuries to both knees. Dr. Lo Coco testified that the knee injuries, of an undisclosed nature, certainly caused Mrs. Cardaro some pain, but that the injuries healed themselves in a short time. He prescribed a rib belt to be worn by Mrs. Cardaro as a splint for the fractured ribs, which, as Mrs. Cardaro testified, was worn by her some 6 weeks, with accompanying discomfort, although there was no great pain for most of that time. Dr. Lo Coco testified that there was no residual injury and that Mrs. Cardaro's knees and ribs had healed.
About a year after the accident, Mrs. Cardaro was treated by Dr. Lo Coco *794 for pain in her left and right shoulders. This was, as the doctor testified, mostly the result of a pre-existing condition of osteoarthritis, which could possibly have been mildly aggravated by the rib fractures, but which would have necessitated substantially the same treatment anyway had the fractures never occurred. Therefore, there can be no reimbursement for these later treatments.
In view of the foregoing evidence, we feel that the award of $250 for personal injuries was inadequate, and is therefore raised to $2250. We feel that this sum is in substantial accord with recent awards for similar injuries, and certainly is not excessive for the pain and suffering borne by Mrs. Cardaro.
We feel that the sum of $114 should additionally be awarded for Mrs. Cardaro's medical expenses arising from her injuries, as shown by the statement supplied by Dr. Lo Coco. Accordingly, the judgment previously affirmed in this case in favor of Jennie Cardaro and against Joseph Sparacino is hereby amended in quantum from $250.00 to $2364.00, with legal interest for date of judicial demand until paid. In all other respects the prior judgment is affirmed.
Amended on rehearing.
NOTES
[1] B. A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:

(1) Nonpayment of premium; or
(2) The driver's license or motor vehicle registration of the named insured or of any other operator who either resides in the same household or customarily operates an automobile insured under the policy has been under suspension or revocation during the policy period or, if the policy is a renewal, during its policy period or the one hundred eighty days immediately preceding its effective date.
(3) Fraud or material misrepresentation in the presentation of a claim.
This subsection shall not apply to nonrenewal or to any policy or coverage which has been in effect less than sixty days at the time notice of cancellation is mailed or delivered by the insurer unless it is a renewal policy. After an insurer has paid and satisfied an insured's third physical damage claim the modification of such insured's automobile physical damage coverage by the inclusion of a deductible not exceeding fifty dollars shall not be deemed a cancellation of the coverage or of the policy.
[2] C. No notice of cancellation of a policy to which subsection (B) applies shall be effective unless mailed or delivered by the insurer to the named insured at least twenty days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten days' notice of cancellation accompanied by the reason therefor shall be given. Unless the reason accompanies or is included in the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer not less than fifteen days prior to the effective date of cancellation, the insurer will specify the reason for such cancellation. This subsection shall not apply to nonrenewal.
[3] "You will, therefore, please take notice at the expiration of ten days from the receipt of this notice, the * * * said policy * * * will * * * cease to be in force." (Italics provided)