281 So.2d 839 (1973)
Shirley HEIMBAUGH
v.
FEDERAL INSURANCE COMPANY, et al.
No. 9372.
Court of Appeal of Louisiana, First Circuit.
June 29, 1973.
Rehearing Denied August 23, 1973.
Writs Refused October 19, 1973.
*840 Cordell H. Haymon, Baton Rouge, for appellant.
Chapman L. Sanford, Baton Rouge, for third party plaintiff-appellee-appellant, Palms Apartment.
Calvin E. Hardin, Jr., Baton Rouge, for defendant-appellee-appellant, Fed. Ins. Co.
Wm. H. Cooper, Jr., Baton Rouge, for defendant-appellee, Holman Mfg. Co.
Before SARTAIN, BLANCHE and WATSON, JJ.
BLANCHE, Judge.
Plaintiff, Shirley Heimbaugh, appeals from the judgment of the trial court dismissing her suit for damages for personal injuries which she sustained as the result of an alleged fall from a chair in an apartment which she was renting from defendant, Palm Apartments, Inc., which injuries plaintiff claims to have sustained as a result of the chair collapsing under her weight. Plaintiff named as defendants in her suit her lessor, Palm Apartments, Inc.; its claimed liability insurer, Federal Insurance Company; Holman Manufacturing Company, the alleged manufacturer of the chair in question; and Holman's insurer, Employers Casualty Company. The trial court rendered judgment dismissing plaintiff's suit, finding that plaintiff failed to prove by the requisite preponderance of the evidence that her injuries were the result of any defect in the leased premises. Palm Apartments, Inc., filed a third party petition against its insurer, Federal Insurance Company, which insurer denied coverage on the ground of late and prejudicial notice of the occurrence of the accident and concomitant alleged breach of the contractual obligations of the insured. The trial court dismissed this third party demand, concluding that Federal Insurance Company was justified in denying coverage on the basis of late and prejudicial notice of the accident. Both plaintiff and Palm Apartments, Inc., appealed.
The evidence shows that plaintiff leased a furnished apartment from Palm Apartments, Inc., on November 17, 1969, and approximately five days subsequent thereto plaintiff sustained an accident in her apartment while she was standing on or at least using a dinette chair to clean kitchen shelves in order to store her dishes in the apartment in which she had only recently moved.
*841 The trial judge gave the following pertinent reasons in support of his dismissal of plaintiff's suit:
"The most important issue in this case concerns the accident itself. If the chair collapsed as petitioner alleges it did, then, excluding any issue of contributory negligence, she may very well recover. However, if, as Palm contends, and again excluding any question of contributory negligence, the chair did not break but either slipped from under the petitioner or was tipped over by her, then it would seem her cause of action would fail. At the trial, plaintiff testified that she placed the back of the chair against the cabinets and stepped up on the seat when suddenly the front legs seemed to collapse inward, sending her to the floor.
"She contacted the Prince Murat Inn where she was employed as a cashier at the time. In answer to her request for aid, John Melancon, the banquet manager at the Inn, went to her residence where he found Mrs. Heimbaugh on the floor in great pain. Mr. Melancon testified that he picked her up and as they were leaving noticed the chair in a tilted position. Mrs. Heimbaugh was hospitalized for five days with a fractured heel. During that time she testified that she spoke with the owner and manager of Palm, Mr. J. A. Rockhold, informed him of the accident and requested that the defective chair be removed. When she returned to her apartment, the broken chair had been replaced, according to her testimony. It is thus the contention of petitioner that Mr. Rockhold or one of his employees, pursuant to her instructions, entered her apartment in her absence and removed the chair.
"This testimony is contradicted by Mr. Rockhold who stated on the stand that he did not talk to Mrs. Heimbaugh while she was in the hospital but first learned of the accident several days after her return. Parenthetically, it must be noted that much of Mr. Rockhold's testimony is at variance with his previous depositions concerning events following the accident. Nevertheless the Court does not believe that Mr. Rockhold is a willful perjurer but at worst a man who is unmindful of circumstances as they occur.
"The testimony of Mrs. Heimbaugh herself, as well as that of Mrs. Smith, an employee of Mr. Rockhold, stated positively that there were three chairs in the apartment when Mrs. Heimbaugh rented same and there were three chairs there when she returned from the hospital the first time. In order for Mrs. Heimbaugh to have carried the burden of proving that a chair collapsed, causing her injury, she would have the Court believe that every one of the employees of Palm and/or Mr. Rockhold willfully perjured themselves when they testified without exception, that they never saw a broken chair in Mrs. Heimbaugh's apartment, much less removed one.
"Mr. Rockhold further testified that even if he was aware of the chair, he could not have removed it because he did not have a key. He stated that the previous tenant had the locks to Mrs. Heimbaugh's apartment changed and that there were only two keysone in the possession of Mrs. Heimbaugh, and the other in the possession of Miss Jereleene Robillard, a tenant and neighbor of the petitioner whose responsibility it was to open the apartments to prospective renters so that they might be inspected. Miss Robillard corroborated this testimony and categorically denied that anybody used her keys during the time petitioner was in the hospital and further added that no one could have acquired the key without her knowledge because she had it hidden.
"In addition to the above testimony, there were the statements of Mr. Joseph Wells, the handyman for Palm, and Ray Rockhold, James Rockhold's brother and manager of the apartments, who emphatically stated they had no knowledge of a *842 broken chair, its whereabouts or who could have taken it.
"No citation need be given for the proposition that petitioner must prove her case by a preponderance of the evidence. It is true that a lessor's liability under La.C.C. art. 2695 is broad where a lessee is injured by vices or defects of the thing rented. However, in order for plaintiff to prevail, she must first show that the accident was caused by a vice or defect. In this regard, the Court does not believe that Mrs. Heimbaugh has proven by a preponderance of the evidence that it was a broken chair which caused her injury.
"On the contrary there is ample evidence to indicate that there never was a broken chair. No one had access to Mrs. Heimbaugh's apartment during her absence because no key was available. No employee of Palm could testify as to any knowledge of the chair. Furthermore, there is abundant testimony to convince the Court that there were three chairs when petitioner originally rented the apartment and there is no question that there were three chairs when she returned from the hospital. In order for the Court to determine that there ever was a broken chair in the apartment, someone would have had to come in during the five days spent by Mrs. Heimbaugh at the hospital, remove the chair, repair it and return it or substitute a good, identically similar chair in its place. As previously stated, however, plaintiff has not proven by a preponderance of the evidence that this event occurred.
"There is no question that petitioner was injured in the apartment, nor is there any doubt in the Court's mind that she fell from a chair. What caused the injuries to petitioner is, of course, the Court's primary concern.
"The Court believes that the answer to this question lies in the testimony of Mr. Humphries T. Turner, Professor of Civil Engineering at Louisiana State University, and stipulated by counsel as an expert in structural design. The Court was very impressed with the testimony of Mr. Turner. His extensive analysis of the three chairs led to his conclusion that static vertical loads of magnitudes consistent with the weight of a person would not cause structural failure of the chairs, that it was physically impossible for the legs to collapse inward as testified by the plaintiff, and that the structural geometry is such that the chairs may be easily overturned in a forward direction when slight pressure (less than six pounds, depending on the weight and center of gravity) is placed on or near the front of the seat. The Court is of the opinion that the most probable occurrence, therefore, is that petitioner stood on the chair and it tilted forward under her weight, causing her to fall and resulting in her injury.
"In the above hypothesis, the Court has attempted to follow the well established principle that `where witnesses differ, the Court should reconcile, if possible, the apparent contradictions their testimony presents. If this cannot be done, then the probabilities or improbabilities of their respective statements must be considered in the light of their capacity, opportunity or incentive for observation, the amount of corroboration, if any, and the degree of proof required.' Nelson v. Zurich Insurance Co., 247 La. 438, 172 So.2d 70 (1965).
"In conclusion, it is the opinion of the Court, after weighing the testimony of all the witnesses and attempting to reconcile differences of fact, that there never was a broken chair; that this is the reason it could not be located; that the only plausible explanation is that the chair tilted under petitioner's weight, throwing her to the floor; that, accordingly, her suit should be dismissed." (Written Reasons for Judgment, Record, pp. 177-180)
*843 We have carefully reviewed the entire record in this proceeding and, while we disagree with certain conclusions reached by the trial judge, as more particularly set forth below, nevertheless, we are satisfied from our review of the record that we cannot say that the trial judge committed manifest error in resolving the issue of fact adversely to the plaintiff. The resolution of this litigation hinges on a simple finding of fact, which finding in turn depends on a determination of the credibility of the witnesses. This determination lies within the province of the trier of fact, and our appellate review of facts is not synonymous with the role of the trial judge in making these findings ab initio. Had the trial judge resolved the issues of credibility in favor of plaintiff, we likewise would find no manifest error from our review of the record, inasmuch as the testimony is in large measure irreconcilable.
We do not agree with the trial judge that Mr. J. A. Rockhold could not have removed the alleged broken chair because he did not have a key to plaintiff's apartment. Mr. Rockhold explained that the prior tenant had replaced the lock and there were only two keys, one which he gave to the plaintiff when he personally rented the apartment to her, and the other which he gave to Mrs. Jereleene Robillard, who acted as a form of resident manager. The testimony of Mrs. Robillard indicates that the lock was replaced by Palm Apartments, Inc., after the prior tenant moved out of the apartment and before plaintiff rented the same. Moreover, both Mrs. Robillard and Joseph Wells, maintenance man for the apartments, testified that there was a master key or a pass key at the office. We, therefore, cannot agree with the trial judge's conclusion that no one had access to plaintiff's apartment during her hospitalization because no key was available.
The fact that Mr. Rockhold or some other employee or representative of Palm Apartments, Inc., could have entered without difficulty plaintiff's apartment during her hospitalization and replaced the alleged broken chair with either a comparable chair or had the alleged broken chair repaired and returned prior to plaintiff's release from the hospital, does not mean that plaintiff has satisfactorily carried the burden of proving that such opportunity was seized and acted upon, and we cannot say that the trial judge committed manifest error in finding that plaintiff failed to prove such to have been done. In the absence thereof, we, like the trial court, are faced with the fact that no broken chair was presented or accounted for.
In this regard we note a significant discrepancy between plaintiff's discovery deposition testimony and her in-court testimony; to-wit, plaintiff testified in her deposition that when she first returned from the hospital there were only two chairs in her apartment and that the broken chair had obviously been removed therefrom, whereas at the trial plaintiff testified that there were three chairs in her apartment to the best of her recollection before the accident and there were likewise three chairs in her apartment when she returned from the hospital following her first admission. Plaintiff was unable to give any satisfactory explanation for this discrepancy in her testimony.
Counsel for plaintiff emphasizes that the trial judge was not justified in disregarding the testimony of the alleged disinterested witness, John A. Melancon. The record shows that the trial judge simply did not give any weight to this testimony. In this connection we note the following reasons given by the trial judge in denying plaintiff's motion for a new trial limited to reargument:
"With respect to the testimony of Mr. Melancon, the Court is convinced that just as he said in his testimony on the witness stand he was thoroughly confused; he was upset. As a matter of fact, he doesn't remember whether he went back into the apartment and got Mrs. Heimbaugh's coat or not, or whether *844 he took her to the hospital without a coat. Apparently it was a chilly day. As I recall, it was some time in November. And he doesn't recall; he was so upset and testified on the witness stand that he was so upset that he didn't remember what he did when he was there. And I've got to agree with Mr. Sanford that it's incredible to me that that woman in her painher excruciating pain as she testified that she was undergoinghad time to tell Mr. Melancon: Go in the kitchen and take a look at that broken chair. Out of all the testimony that was elicited from that man on the witness stand the most he could give was that he saw a chair tilted forward and down to the left side. He didn't testify, at any time in that case, that he saw a broken leg on a chair in the kitchen of that lady's apartment.
"I have to disagree with you one hundred percent, Mr. Haymon. I went into every bit of testimony in this case." (Oral Reasons for Judgment denying motion for new trial, Record, pp. 184-185)
Counsel for plaintiff further argues that in all probability there were four dinette chairs and the broken one was removed, thus leaving three chairs in the apartment at the time plaintiff returned from her first hospitalization. We find no merit to this conjectural and speculative argument, particularly in view of plaintiff's own positive testimony that as best as she could recall there were only three chairs in the apartment when she rented it and at the time of the accident.
In the absence of finding from our review of the record any manifest error committed by the trial judge in his resolving the questions of credibility of the witnesses and the basic finding that plaintiff failed to prove by a preponderance of the evidence that the chair was defective and broke under her weight, the judgment dismissing plaintiff's suit must be affirmed.
There remains for consideration the appeal by Palm Apartments, Inc., from the dismissal of its third party demand against its liability insurer, Federal Insurance Company. The trial judge disposed of this issue in the following manner:
"* * * The question now remains, should Palm recover attorney's fees and penalty from its insurer, Federal, because of the latter's alleged breach of contract in not defending Palm in the main action? Federal contends that they were not notified of the suit until February 17, 1970, when their agent, Eustis, received a letter from petitioner's attorney advising Eustis of the accident. They claim that by this time the delay had seriously impaired their right to an investigation of the accident and they were therefore prejudiced. Palm contends that its owner, J. A. Rockhold, gave oral notice to Eustis of the possibility of a claim several weeks after the accident. However, all the employees at Eustis denied receiving such a call and the Court is inclined to believe that notification was not received until the letter of February 17, 1970, from petitioner's attorney.
"Regardless, the question before the Court is whether or not Palm may receive a penalty and attorney's fees as provided by La.R.S. 22:658. This article contemplates penalties and attorney's fees where an insurance company's failure to honor its contract is `arbitrary, capricious, or without probable cause'. Under the circumstances as they were manifested immediately after the accident, the Court is of the opinion that Federal's refusal to provide Palm a defense was not arbitrary, capricious or without probable cause. In Jackson v. State Farm Mut. Automobile Ins. Co., 211 La. 19, 29 So.2d 177 (1946), the Supreme Court clearly stated that each case involving delayed notice must stand on its own facts and that the Court may consider the good faith of the insured *845 and injured party, and the existence of any special circumstances, especially those indicating fraud and collusion. This the Court has done in the instant case.
"Accordingly, the Court is of the opinion that Federal's denial of coverage was not unreasonable and thus any claim for damages and attorney's fees is disallowed." (Written Reasons for Judgment, Record, p. 181)
In relying on the "arbitrary, capricious, or without probable cause" language of R.S. 22:658 in determining whether or not the insurer is liable for denial of coverage, the trial court erred. This issue was recently given extensive treatment by this Court in Clemmons v. Zurich General Accident & Liability Insurance Company, 230 So.2d 887 (La.App. 1st Cir. 1969), wherein the applicable law was summarized as follows:
"The question of an insured's contractual right to be provided with a defense in matters such as these and the position of the insurer when a question of coverage arises present a difficult problem for both the insured and the insurer. As a general rule where the policy contains a clause similar to the one quoted hereinabove, even though such suit is groundless or fraudulent, the insurer is required to furnish the insured with a defense. 50 A.L.R.2d 463(3). The dilemma in which the insurer finds itself is recognized and one of two courses of action is available to it. It may require the execution of a non-waiver agreement whereby the insurer agrees to defendant and the insured recognizes the right of the insurance company to question coverage; or, the insurer may bring an action against the insured for a declaratory judgment on the question of coverage. In the first instance, the insured is not required to sign. In the second instance, the insured is not entitled to attorney's fees for defending the action. Standard Surety & Casualty Company of New York v. Perrin, 19 So.2d 783 (Orl.App., 1944).
"The dilemma, of course, is compounded in Louisiana because an action by an injured party may be directed jointly against the insurer and the insured in which case there may arise a conflict of interest between the insurance company and its insured.
"Our courts have recognized that an insurer may deny coverage and yet furnish its insured with a defense without subjecting itself to liability. Fontenot v. State Farm Mutual Insurance Company, 119 So.2d 588, (1st La.App., 1960). This in essence would satisfy the non-waiver requirement mentioned above. Further, an insured who hires an attorney to litigate the issue of coverage alone is not entitled to recover for attorney fees. Breitenbach v. Green, 186 So.2d 712 (4th La.App., 1966). This is similar to the second alternative available to an insurer." (Clemmons v. Zurich General Accident & Liability Insurance Company, 230 So.2d at 894, 895)
In the instant case, clearly the allegations of the petition stated grounds for making applicable the liability insurance policy issued by Federal Insurance Company to Palm Apartments, Inc., which policy was in full force and effect at the time of the accident in question. Federal Insurance Company made the decision not to afford its named insured with a defense to the liability claim on the ground of alleged late notice of the occurrence of the accident, which late notice Federal Insurance Company claims was prejudicial.
Our review of the record and the arguments presented on behalf of Federal Insurance Company fail to convince us that Federal Insurance Company was indeed prejudiced by the alleged late notice of the occurrence of the accident. It is well settled that unless the insurer demonstrates that it has been actually prejudiced *846 by its insured's failure to give notice of the accident or claim immediately, the insurer cannot defeat its liability to its insured under the policy because of nonprejudicial failure of its insured to give immediate notice of the accident. This same rule of the requirement that the insurer establish prejudice resulting from late notice of either the occurrence of the accident or the filing of the suit, has been properly expounded upon by the Third Circuit Court of Appeal in Miller v. Marcantel, 221 So.2d 557 (La.App. 3rd Cir. 1969).
In the instant case the insurer received formal notice of the occurrence of the accident no later than three months after its occurrence. Although this constituted "late notice" of the occurrence of the accident, as found by the trial judge, nevertheless, it has not been demonstrated to our satisfaction that the insurer sustained any prejudice as a consequence thereof. In the absence of the sustention of such prejudice, the insurer was not justified in refusing to afford its named insured with a defense to the liability claim.
In relying on the "arbitrary, capricious, or without probable cause" language of R.S. 22:658, the trial court effectively utilized a rule that the insurer can deny coverage and refuse to afford a defense to its insured with impunity unless such action is "arbitrary, capricious or without probable cause," thus placing the burden of proof upon the insured which has been denied coverage, rather than requiring that the insurer establish not only the failure of its insured to give timely notice of the occurrence of the accident but also prove prejudice as a result of the "late notice" of the accident. In holding that Federal Insurance Company was not liable to its insured for costs of defense, including reasonable attorney's fees, the trial court erred.
Counsel for Palm Apartments, Inc., indicates that an agreement was reached between the insurer and the insured that the court would assess a fee based on the trial and the record without the taking of evidence. We decline to do so, and feel that the more appropriate course of action is to nonsuit the claim of Palm Apartments, Inc., against its insurer, Federal Insurance Company, which was the course of action taken by the Third Circuit Court of Appeal in Benoit v. Fuselier, 195 So.2d 679 (La.App. 3rd Cir. 1967):
"* * * Since Continental failed to fulfill its contractual duty, it is liable to the defendant Mrs. Fuselier upon her third-party demand for reasonable attorney's fees and for all costs of these suits. In the absence of evidence in the record showing the value of such reasonable attorney's fees, this appellate court will non-suit plaintiff's claim in this regard. Thomas W. Hooley and Sons v. Zurich General Acc. & Life Ins. Co., 235 La. 289, 103 So.2d 449, 67 A.L.R.2d 1078." (Benoit v. Fuselier, 195 So.2d at 683)
For the foregoing reasons, the judgment of the trial court is affirmed in all respects with the exception that we reverse the judgment insofar as it dismissed the third party demand of Palm Apartments, Inc., against Federal Insurance Company to have Federal Insurance Company held liable for costs and reasonable attorney's fees incurred by Palm Apartments, Inc., in defense of this suit, and we amend the trial court judgment so as to nonsuit the demand of Palm Apartments, Inc., for such costs and reasonable attorney's fees. All costs of this appeal are assessed one-half to plaintiff and one-half to Federal Insurance Company.
Affirmed in part; reversed in part and rendered.
SARTAIN and WATSON, JJ., concur.
WATSON, J., assigns written reasons.
WATSON, Judge (dissenting):
I submit that the majority errs in affirming the trial court's decision on the issue of liability.
*847 In my opinion, this is not a question of credibility but a question of preponderance. On the issue of whether plaintiff carried her burden of establishing that the chair broke, I believe that plaintiff has proved her version of the accident by testimony of an entirely disinterested witness, Melancon, who saw the broken chair. The trial court apparently disregarded Melancon's testimony on the basis that the witness was nervous and did not remember certain details such as whether he got the plaintiff's coat. The fact that he honestly admitted not remembering some details of two years past does not cast doubt on his testimonyif anything, it adds the ring of truth to what he said. A disinterested witness's testimony is entitled to great weight. Paquin v. Stockman, 203 So.2d 419 (La.App. 3 Cir. 1967). Also positive testimony is accorded more weight than negative. Acres v. Monroe Transfer and Warehouse Company, 154 So. 385 (La.App. 2 Cir. 1934).
Furthermore, the trial court observed that the principal defense witness, Mr. Rockhold, is ". . . not a willful perjurer but at worst a man who is unmindful of circumstances as they occur" which apparently means that the trial court did not believe that witness, yet Rockhold's testimony was relied upon in rejecting plaintiff's demands. Regardless of whether Rockhold is believed, I conclude that the positive testimony of plaintiff and Melancon outweighs the entirely negative testimony of the defendants' witnesses who testified they saw no broken chair.
The chair disappeared while plaintiff was in the hospital, her hospitalization being a fact unknown to Mr. Rockhold although he spoke with her, the hospital bookkeeper, and the hospital office manager by telephone shortly after the accident. Also, Mr. Rockhold denied having access to the apartment while plaintiff was in the hospital although there is much contradictory testimony on this subject from defendants' witnesses.
It is noteworthy that the expert witness, who tested similar chairs (several hundred of which have broken in the apartments rented by the defendant lessor), stated that in his opinion it is possible that the chair broke in the manner alleged by plaintiff. His description of one of the chairs found in plaintiff's apartment on her return from the hospital is illuminating:
"... Item Number 1, I noted that: Front rung is unglued at the right front leg. This joint ... which is placed on there. The right front rung is unglued at the right front leg. This joint seems tight though the glue is not effective. Glue is not effective at the top of the right front leg. This joint is apparently held together by the wood screws and is not rigid. Then the front seat support member is unglued at the right end, but the joint is tight, due to a tight fitting dowel. Repairs have been made to both corner braces at the rear of the seat frame with both glue and nails. The connections are presently rigid. Both side members of the seat frame have been reglued at the rear legs with some misalignment resulting in a gap in the joint varying from zero to a sixteenth of an inch. The joints are rigid. Front leg bracing dowels have been reglued and are tight. Rear seat support member has been repaired and reglued at the left end. Part of this member has been broken out and repaired with wood filler. A small piece has been placed back in position and is held with both glue and small brads. Right end of the rear seat support member has been reglued, but is not rigid.
All of this applies only to Chair No. 52." (TR. 490-491)
There is no doubt that a lessor is responsible for injuries suffered by a tenant which are caused by a defective condition of the premises. LSA-C.C. art. 2695. Joyner v. Aetna Casualty & Surety Co., 240 So.2d 545 (La.App. 2 Cir. 1970), amended 259 La. 660, 251 So.2d 166 (1971). In my opinion, this liability would extend to cover a chair breaking under a lady standing on it to clean kitchen shelves too tall for her *848 to reach. Cf. Nettles v. Forbes Motel, Inc., 182 So.2d 572 (La.App. 1 Cir. 1966).
For these reasons, I respectfully dissent from the majority's holding on the issue of liability. As to the third party demand, I concur.