BLANCHE, Judge.
As a result of an automobile accident, suit was instituted by Gerald Averett, plaintiff-appellee, against George Alexander, Jr., and defendant-appellant, State Farm Mutual Automobile Insurance Company, claiming recovery against State Farm based on the uninsured motorist coverage of a policy of automobile insurance issued by State Farm to plaintiff-appellee. Arising out of the same accident and consolidated for trial with the aforementioned case was a suit instituted by Alexander against Averett.
Judgment was rendered by the trial court in favor of Averett in his suit, and only State Farm has appealed. No judgment was rendered in the Alexander suit. We affirm the trial judge’s findings as to liability but amend the award of damages in favor of plaintiff by reducing the same on the basis that they are grossly excessive and an abuse of discretion.
At the outset, we note that plaintiff’s recovery under the aforementioned policy hinges upon our determination of Alexander’s liability since at the time of the accident he was an uninsured motorist within the meaning of State Farm’s policy.
This suit involves basically a factual dispute. The uncontroverted evidence indicates that an automobile accident occurred on October 21, 1973, at approximately 11:00 A. M., at the intersection of Baham and Overmier Roads in Tangipahoa Parish, involving a 1972 Cadillac owned and driven by Gerald Averett and a 1966 Chevrolet owned and operated by George Alexander, Jr. The Alexander vehicle was towing a 1962 Oldsmobile being steered by Norman Cyprian, in which Melvin Williams, Alexander’s seventeen-year-old step-son, was riding. Both roads are approximately eighteen feet wide with gravel surfaces.
Plaintiff’s version of the incident is that he was traveling in a northerly direction on Baham Road and turned left onto Over-mier Road, with no car in sight behind him. Subsequently, he claims that he looked in both directions and reversed his direction, backing almost all the way across Baham Road. Then he claims he stopped, looked in both directions and placed his car in “Drive” to start forward, intending to turn on Baham Road in a southerly direction. At this point, plaintiff claims his car stalled partially in the intersection, but with room for a vehicle traveling on Baham Road to avoid a collision by maneuvering around his car. Plaintiff states that he believed his car was flooded and waited a minute or two before trying unsuccessfully two or three times to start his car. While stalled in the intersection, plaintiff asserts that Alexander’s vehicle, towing another car along Ba-ham Road in a northerly direction, rounded a hill about 750 feet south of the intersection, traveling about 40 to 50 miles per hour. Plaintiff further asserts that after rounding the hill the defendant’s car hit a rough section of road about 250 feet from the intersection, causing the back car to strike the front car and forcing the cars to slide and veer out of control. Plaintiff claims that before he could extricate himself from his automobile he was hit on the driver’s side by the Alexander vehicle, causing his injuries.
Alexander, on the other hand, claims he was following plaintiff’s vehicle along Ba-ham Road by about 50 feet for approximately three-quarters of a mile. He inconsistently asserts that plaintiff’s vehicle was traveling at about 40 to 50 miles per hour, while his automobiles were traveling at approximately 25 to 30 miles per hour. He further asserts that plaintiff turned left onto Overmier Road and suddenly and without warning reversed his direction and *230 backed into the intersection, with Alexander’s automobile about 15 or 20 feet behind, causing Alexander to strike plaintiff’s vehicle. Alexander’s version of the facts would mean that while his automobile was traveling at a rate of speed of 25 to 30 miles per hour, the plaintiff was able to turn left, reverse, and back into the into the intersection before Alexander traveled 30 to 35 feet. Alexander claims he was unable to avoid the collision.
The burden of proof is on the plaintiff to prove his claim by a preponderance of the evidence. See Triche v. Mashburn, 303 So.2d 563 (La.App. 1st Cir. 1974), and the cases cited therein. In the instant case the only evidence offered by the plaintiff was his uncorroborated testimony, directly in conflict with Alexander’s version of the story. However, on the other hand, plaintiff has raised inconsistencies in Alexander’s testimony and that of his witnesses, discrediting their veracity. Thus, the issue is whether the trial judge was justified in accepting plaintiff’s uncorroborated version of the facts as sufficient to sustain his burden of proof.
The trial judge did not assign written reasons, but his ultimate disposition of the case requires the conclusion that he believed plaintiff and did not believe Alexander or any of his witnesses. While the plaintiff’s testimony as to how he happened to be blocking approximately half of the road was uncorroborated, Alexander’s testimony and that of his witnesses demonstrated inconsistencies concerning the rate of speed of the vehicles, the operation of the brakes in the car being towed, and the distance and time during which the Alexander vehicle followed behind plaintiff’s vehicle. The testimony of Melvin Williams, Alexander’s step-son, was in conflict with his prior deposition. Also, Alexander admitted to lying in an earlier deposition. Therefore, these factors would furnish a reasonable basis for the trial judge’s determination that Alexander’s repdition of the facts was not credible.
While the trial judge’s factual findings are only indicated by his final holding in favor of the plaintiff, it is apparent that he found the facts to be as plaintiff asserted. Such a finding necessarily depends on a determination of the credibility of the witnesses in this case. As this Court said in Heimbaugh v. Federal Insurance Company, 281 So.2d 839 (La.App. 1st Cir. 1973), writs denied, La., 283 So.2d 771 (1973):
“ * * * This determination lies within the province of the trier of fact, and our appellate review of facts is not synonymous with the role of the trial judge in making these findings ab initio. * * * ” (281 So.2d at 843)
Therefore, we uphold the trial judge’s obvious determination that the facts were as presented by plaintiff based on his ultimate decision in plaintiff’s favor. This result is in accordance with the standard of review of facts for appellate courts as set out in Canter v. Koehring Company, La., 283 So.2d 716 (1973).
State Farm contends that the plaintiff’s conduct constituted contributory negligence. However, the facts as evidently found by the trial court indicate that the plaintiff exercised reasonable care in backing across the intersection. Further, even assuming that plaintiff’s conduct in allowing his car to partially block the road was substandard, and thus a breach of a duty, the ambit of his duty did not extend to the risk encountered. The evidence relied on by the trial court indicates that Alexander was towing another vehicle at unsafe speeds on a gravel road was was unable to safely maintain control of his vehicle. Further, the plaintiff was only partially blocking the intersection, which left adequate room for another vehicle to avoid the collision by the exercise of reasonable care and attention in operating the vehicle. Thus, any duty owed by the plaintiff to Alexander would not extend to the risk encountered in this instance where, by the *231 exercise of reasonable care in the operation of his vehicle, Alexander could have easily avoided the accident. See e. g., Laird v. Travelers Insurance Company, 263 La. 199, 267 So.2d 714 (1972).
Since Alexander is liable for plaintiff’s injuries, State Farm must indemnify plaintiff . for his losses pursuant to the provisions of their uninsured motorist’s policy.
QUANTUM
Immediately after the collision, plaintiff experienced pain in his left side and difficulty in breathing, as well as bleeding from his left ear. Upon being taken to Hood Memorial Hospital in Amite, Louisiana, an extensive examination to determine if there were any head or chest injuries revealed a fracture of the left, seventh rib and contusion of the chest. Plaintiff remained in the hospital for four days and was treated by Dr. Charles Genovese, a general practitioner, who prescribed bed rest and analgesics for pain. Dr. Genovese testified that the rib probably healed within a three-week period, during which time he saw plaintiff four times. During the next year, Dr. Genovese saw plaintiff at about three-month intervals, at which times. he complained of soreness and stiffness.
Plaintiff contends additionally that about two and a half months after the accident he developed some pain, although not severe, in his neck and between his shoulders, with a slight confinement of motion of the neck to the left. Dr. Genovese testified, however, that the first time plaintiff complained of neck soreness was on October 10, 1974, about one year after the accident. It is unexplained as to why plaintiff did not complain to the doctor about his neck even though he saw him several times within this period. Further, Dr. Genovese testified that if the pain in the neck had been related to the accident, in his opinion, the chances would have been greater that plaintiff would have complained of the pain soon after the accident happened. On March 4, 1975, Dr. Genovese referred him to Dr. Daniel S. Sinclair, an orthopedic surgeon.
We conclude that plaintiff has failed to carry his burden of proof and to show by a preponderance of the evidence that the neck injury was causally related to the accident.
Plaintiff asserts that his son took over the supervision of the dairy farm while he was disabled and that he is entitled to recover the sum representing additional wages paid to his son during this period. Plaintiff testified that he was confined to his house for about two or three weeks and was able to resume his regular supervision pf the operation about two and a half months after the accident. However, plaintiff contends that he is entitled to additional wages paid to his son for twenty weeks, to be computed by averaging twenty weeks’ wages prior to the accident and twenty weeks after the accident and finding the amount of additional wages paid.
The evidence in the record indicates that plaintiff’s son was responsible for additional duties caused by plaintiff’s disability for only two and a half months, or ten weeks. Furthermore, the payroll records do not show an increase in his son’s pay for the weeks immediately following the accident. In fact, during the weeks prior to the accident the son received $100.80 and $99.20, whereas the two weeks after the accident he received $83.20 and $94.40. If we combine the amount paid for the ten-week period before the accident and compare it to the ten-week period after the accident, a total of $452.40 more was paid for the period after the accident. From our review of the record, this is the maximum amount of additional wages which plaintiff is entitled to recover.
The trial judge awarded plaintiff a lump sum of $8,849.95 without any indication as to the basis of his computation of special and general damages. All medical and hospital bills were paid by the insurer ex *232 cept charges of $74 and $10 of Dr. Sinclair, which were for the neck injury that we have found not to be causally related to the accident. If we deduct the amount of additional wages of $452.40 from the award of $8,849.95, this leaves a total of $8,397.55 as the sum for general damages for pain, difficulty in breathing and soreness associated with the fracture of one rib.
The trial judge is granted great discretion in fixing awards for general damages which cannot be fixed with any degree of certainty, such as pain and suffering. The appellate court’s review must be limited to a determination of whether the trial court abused its discretion, based on the circumstances of the case. Anderson v. Welding Testing Laboratory, Inc., La., 304 So.2d 351 (1974). While awards made.in similar cases provide no scale for assessing damages, they may be used to determine if an issue of abuse of discretion is present. Anderson v. Welding Testing Laboratory, Inc., supra.
The amount awarded in this case for pain and suffering is excessive when compared to awards made to plaintiffs with similar or even more severe injuries. A sixty-five year old woman with three or four fractured ribs, necessitating the wearing of a rib brace for six weeks, and injuries to both knees received only $2,250 for pain and suffering. Harang v. Sparacino, 257 So.2d 785 (La.App. 4th Cir. 1971). In Boles v. Fireman’s Fund American Insurance Company, 250 So.2d 529 (La.App. 2nd Cir. 1971), the plaintiff received only $2,000 for pain and suffering resulting from three fractured ribs.
While plaintiff’s injury to his rib was painful, there was no residual effect, and an award of $8,397.55 for pain and suffering resulting from one broken rib and contusion of the chest cannot be reasonably supported by the evidence in the record. An award of $2,500 would adequately compensate the plaintiff.
For the above and foregoing reasons, the judgment of the trial court is amended by reducing the award to plaintiff, Gerald Averett, to the sum of $2,952.40, representing $452.40 for additional wages paid to his son and $2,500 for pain and suffering. In all other respects the judgment is affirmed. All costs of this appeal are to be borne by defendant-appellant, State Farm Mutual Automobile Insurance Company.
AMENDED, AND AS AMENDED, AFFIRMED.